CORRIE WIEDMANN vs. THE BRADFORD GROUP, INC.,[1]
& others.[2]

Middlesex. April 4, 2005. - July 21, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Labor,* Wages, Failure to pay wages. *Contract,* Employment. *Practice, Civil,* Preservation of evidence, Summary judgment, Damages, Attorney's fees, Answer, Amendment. *Damages,* Breach of contract, Attorney's fees. *Statute,* Construction.

Discussion of the weekly wage law, G. L. c. 149, §§ 148-159C. [703-704]

Discussion of the statutory duty of employers to keep certain employee records for two years. [704]

In a civil action that the plaintiff former employee brought against the defendants (the company that formerly employed the plaintiff and three individuals) for payment of commissions that the plaintiff claimed the defendants owed her, the judge hearing a motion for sanctions for spoliation of evidence did not abuse her discretion in ruling that the defendants, who had not retained the plaintiff's employment records, could not, without documentary support, challenge the plaintiff's calculations as to her commissions or assert that the plaintiff was overpaid, where the defendants were on notice of the plaintiff's claim prior to the destruction of the records; where the destruction of the records unfairly prejudiced the plaintiff, both in proving her case and in refuting the defendants' claims that she was overpaid, and put an unfair burden on her to show what the documents would have shown if they were produced; and where the defendants had a statutory duty to maintain employee records relevant to the payment of wages [704-707]; moreover, the judge properly granted summary judgment in favor of the plaintiff, where, without testimony concerning the defendants' challenges to the plaintiff's calculations, all that was before the judge were mere assertions by the defendants concerning the terms of the plaintiff's oral employment contract [707-708].

In a civil action for payment of commissions allegedly owed to the plaintiff, the former employee of the defendants, the judge granting summary judgment in favor of the plaintiff correctly determined that the weekly wage law, G. L. c. 149, §§ 148-159C, applied, where there was no dispute concerning the total from which deductions would be taken or about the applicable formulas and deductions other than whether a deduction for group payroll should always be taken, and thus, the amount owed the plaintiff was arithmetically determinable. [708-709]

[1]Doing business as BBA Technical Services.

[2]T. Earl Harvey, also known as Thomas E. Harvey; Michael J. O'Mara; and Bruce Higginbotham.

In a civil action for payment of commissions allegedly owed to the plaintiff, the former employee of the defendants, the judge granting summary judgment in favor of the plaintiff erred in ruling that G. L. c. 149, § 150, the weekly wage act, required her to award treble damages to the plaintiff; therefore, this court vacated the award and remanded for reconsideration whether treble damages were warranted. [709-710]

The judge in a civil action for payments of commissions allegedly owed to the plaintiff erred in holding one individual defendant liable as an employer under the weekly wage act, G. L. c. 149, § 148, where the individual defendant had a management role, but where there was insufficient evidence as a matter of law that the individual defendant directed and participated to a substantial degree in formulating the corporation's policy. [710-712]

In a civil action, the judge did not abuse her discretion in denying the defendants' motion to amend their answer to add counterclaims, where the motion was filed over a year after the deadline for motions pursuant to Mass. R. Civ. P. 15, after the conclusion of discovery, and only a few days before the matter was scheduled to be disposed; and where the judge rejected the reason given for the failure to add counterclaims, secretarial inadvertence, given that the defendants had filed two answers with the same omission prior to making the motion. [712-713]

CIVIL ACTION commenced in the Superior Court Department on September 14, 2001.

Motions to amend the answer and for sanctions for spoliation of evidence were heard by *Janet L. Sanders*, J.; the case was heard by *Leila R. Kern*, J., on a motion for summary judgment; entry of separate and final judgment was ordered by *Julian T. Houston*, J., and a motion for attorney's fees was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Danielle E. deBenedictis* for the defendants.

*Kevin S. Sullivan* for the plaintiff.

*Thomas F. Reilly*, Attorney General, & *Karla E. Zarbo*, Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

IRELAND, J. This case involves a dispute concerning the formula that was to be used to calculate Corrie Wiedmann's (plaintiff's) commissioned wages pursuant to the terms of an oral employment contract. The dispute led to the plaintiff's commencing an action in September, 2001, asserting claims

under the common law and G. L. c. 149, § 148, the weekly payment of wages law (weekly wage law).[3]

In the course of the lawsuit, the plaintiff discovered that the defendants[4] did not retain her employment records. On February 5, 2003, she filed a motion for sanctions based on the defendants' spoliation of evidence relevant to proving the terms of the oral contract. A Superior Court judge granted the plaintiff's motion and ordered that, absent documentary support, the defendants could not challenge the plaintiff's calculations of her earned commissions or assert that the plaintiff was overpaid. The judge invited the plaintiff to file a motion for summary judgment, which she did. A second judge allowed the motion for summary judgment, held the three individual defendants liable pursuant to G. L. c. 149, § 148, and granted the plaintiff treble damages, as well as attorney's fees and costs. In granting the plaintiff treble damages, the judge stated that she was required to do so by the statute. G. L. c. 149, § 150.

The defendants appealed, asserting that it was error to (1) grant the motion for sanctions for spoliation without which summary judgment would not have been granted; (2) grant the motion for treble damages and attorney's fees; (3) enter judgment against Bruce Higginbotham; and (4) deny the defendants' motion to amend their answer to assert counterclaims against the plaintiff. We transferred this case from the Appeals Court on our own motion. We affirm the allowance of the plaintiff's motions for sanctions for spoliation, summary judgment, and for attorney's fees and costs, and affirm the denial of the defendants' motion to amend their answer. Because we conclude that the statute does not mandate the entering of treble damages for the plaintiff, we vacate the award of treble damages and remand the case to the Superior Court for reconsideration of the issue. We further conclude that there is insufficient evidence to support a finding that Bruce Higginbotham was an employer under G. L. c. 149, § 148. Accordingly, we vacate the judgment against him.

---

[3]We acknowledge receipt of an amicus brief from the Fair Labor and Business Practice Division of the Office of the Attorney General.

[4]Except where relevant, we make no distinction between the defendant company and the three individual defendants, referring to them collectively as the defendants.

*Facts and procedural background.* We set out the essential facts, which are not disputed, leaving certain details for our discussion of the issues. The plaintiff worked for the defendants from February, 1999, until September 22, 2000, when she voluntarily left. Thomas Earl Harvey was the president, treasurer, clerk, and owner of The Bradford Group, Inc.; Michael J. O'Mara was the office manager and ran the company; Bruce Higginbotham was a group leader and general manager of the company. In April, 2000, the plaintiff was given a commission-only position as a recruiter in a group under Higginbotham. Commission statements from May through September, 2000, reveal that the plaintiff drew money against her commission payments.

The terms of the plaintiff's employment contract were oral, and the commission structure was set by O'Mara. We need not set out the specific details of how the plaintiff's commissions were calculated, because the only dispute about their calculation is whether group payroll always had to be deducted before the plaintiff's commissions were determined. The plaintiff claims that the only time that group payroll was to be deducted was if a monthly goal was not reached. In a deposition, she stated that this was a moot point because the monthly goal was always met. Consistent with the plaintiff's position, monthly commission statements showing the calculations of her commissions for May through August, 2000, do not reflect any group payroll deductions.

On October 4, 2000, after the plaintiff had left her job and inquired about commissions owed her, she had a meeting with O'Mara and Higginbotham. In that meeting, O'Mara told her that there had been an error in the calculation of her commission payments for September — group payroll had not been deducted. O'Mara said that he reworked the figures in order to correct them. Accordingly, the September commission statement, unlike previous commission statements, shows a deduction for group payroll and a balance owed to the plaintiff of approximately $1,000, for which she was given a check. O'Mara told the plaintiff that no other commissions would be forthcoming. In the course of the lawsuit, the defendants re-

calculated the plaintiff's earlier commissions statements, and claim that the plaintiff was overpaid a total of $8,486.19.[5]

On November 10, 2000, through counsel, the plaintiff sent a letter demanding full payment of commissions she claimed she was owed. In the letter, she also requested copies of all of her records, including employment records, commission schedules, and records of fees received. Although O'Mara testified in a deposition and an affidavit that the defendants responded to the letter through counsel,[6] the plaintiff testified that she never received a response from the defendants. The record does not contain a copy of any response to the plaintiff's letter.

As required, the plaintiff contacted the Attorney General's office and was given permission to pursue the case as a civil matter. G. L. c. 149, §§ 148, 150. On September 14, 2001, the plaintiff, with new counsel, commenced this action. Her accompanying motion for an ex parte trustee attachment in the amount of $50,000 was granted.

During the course of discovery, the defendants were unable to provide the plaintiff's employment records to her, which led to the plaintiff's filing a motion for sanctions for spoliation. The records were kept electronically, but paper copies of commission statements and the reports used to determine commissions were also made. These paper records were lost or destroyed after the defendants were on notice that the plaintiff had a potential claim against them. Moreover, the electronic copies were unretrievable because the computer software that was used to read the documents was corrupted and the company that created the software was out of business. The defendants stated that they did not believe that the plaintiff would take any further action against them because she did not contact them after her attorney sent them the letter demanding payment and records.[7]

---

[5]Figures submitted in a joint pretrial memorandum show that the defendants claim that their total group salaries (April through September, 2000) were $120,000. There is nothing in the record showing how the defendants arrived at that particular figure.

[6]The office of the defendants' present counsel was also representing the defendants at the time they received the plaintiff's letter.

[7]In their opposition to the plaintiff's motion for sanctions for spoliation of

The defendants vacated their Boston office in December, 2001.[8]

As discussed, the defendants appealed from the decisions granting the plaintiff's motions for sanctions for spoliation, summary judgment, treble damages, and attorney's fees against all defendants, as well as from denial of their motion to amend their answer to add counterclaims.

*Discussion.* 1. *G. L. c. 149, §§ 148-159C.* One purpose of the weekly wage law is to ensure that employees receive prompt payment of wages. *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 147 (1959). See *Boston Police Patrolmen's Ass'n* v. *Boston*, 435 Mass. 718, 720 (2002) (clear purpose of weekly wage law is to prevent unreasonable detention of wages).

General Laws c. 149, § 150, limits the defenses available to an employer for nonpayment of wages and permits a private right of action. General Laws c. 149, § 148, applies, "so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee." See *Commonwealth* v. *Savage*, 31 Mass. App. Ct. 714, 716 (1991). Relevant cases have addressed whether a plaintiff's commission structure allowed him or her to bring an action under the weekly wage law. See, e.g., *id.* at 716-718 (holding that weekly wage law did not apply to real estate broker whose commissions were episodic, and where broker functioned, and filed taxes, as independent contractor); *Cumpata* v. *Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 168 (D. Mass. 2000) (holding that weekly wage law did not apply to commissions earned beyond base salary under separate contract). Although the *Savage* court inferred from the title of the weekly wage law that it applied to commissions that were paid on a weekly basis, nothing in the weekly wage law

evidence, the defendants claimed that one of their employees destroyed the documents sometime before October, 2001. This is contrary to counsel's assertion at oral argument that the documents could have been seized by the defendants' landlord or bank.

[8]However, there also was an office in Florida, to which various financial documents were sent.

itself requires the weekly payment of wages. *Id.* at 716. Rather, it sets out different payment deadlines for different types of employees. G. L. c. 149, § 148.[9] The paragraph of § 148 that is relevant to commissions states that it applies "so far as apt" to commissions that are definitely determined and have become due and payable. The parties do not dispute the applicability of this particular provision of the weekly wage law. See generally *Barthel* v. *One Community, Inc.*, 233 F. Supp. 2d 125, 126-127 (D. Mass. 2002) (rejecting defendants' argument that weekly wage law applied only to weekly payment of commissions for purposes of motion to dismiss). However, as we discuss, *infra*, the defendants argue that the sum owed the plaintiff was not "definitely determined" and, therefore, the weekly wage law does not apply.

2. *Employers' statutory duties.* Employers are required to keep, for two years, records concerning their employees' working hours and payment of wages,[10] and the Attorney General is entitled to access to these records. G. L. c. 151, § 15. The Attorney General has the authority to demand access to any documents that bear on a question of wages. G. L. c. 151, § 3. Moreover, any employer who fails to keep the requisite records is subject to a civil citation or order pursuant to the weekly wage law. G. L. c. 151, § 19. These requirements create a presumption that the records are relevant to disputes over wages brought either by the Attorney General or by private parties. See G. L. c. 149, §§ 27C, 148, 150. These duties apply to the defendants.

3. *Issues.* a. *Spoliation.* The defendants argue that it was error to grant the motion for sanctions for spoliation, without which summary judgment would not have been granted. As discussed, the sanction imposed was that the defendants were precluded

[9]For example, "employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general" may be paid biweekly, semimonthly or, at the employee's election, monthly. G. L. c. 149, § 148.

[10]The record does not reveal how many employees the defendants had, but if there were more than twenty, the defendants would also be subject to the requirements of G. L. c. 149, § 52C, which requires employers to retain personnel records for three years after an employee's separation from the employer.

from challenging the plaintiff's calculations or asserting that the plaintiff was overpaid unless they produced supporting documentation. Because they could not provide that documentary support, the order had the effect of precluding the oral testimony of witnesses to contest these issues. The defendants argue that because the agreement concerning the calculation of the plaintiff's commissions was oral, it does not matter whether the plaintiff's employment records are available, because the documents would have no bearing on the issue in the case. Indeed, they concede that the documents would support only the plaintiff's case, because the defendants did not apply the contested deductions to the plaintiff's commissions until the alleged error was discovered by O'Mara after the plaintiff left the defendants' employ. They argue further that the documents were lost or destroyed pursuant to the closing of the defendants' Boston office and the "breakdown" of the defendants' computer, and thus, the sanction was too severe. They also argue that, in any event, oral testimony would be the only way to determine the facts in this case.

"The destruction of relevant evidence . . . has a pernicious effect on the truth-finding function of our courts." *Fletcher* v. *Dorchester Mut. Ins. Co.*, 437 Mass. 544, 553 (2002). The doctrine of spoliation allows a court to impose sanctions and remedies for the destruction of evidence in civil litigation, "based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results." *Keene* v. *Brigham & Women's Hosp., Inc.*, 439 Mass. 223, 234 (2003) (default appropriate against hospital that lost records critical to plaintiff's case). See *Kippenhan* v. *Chaulk Servs., Inc.*, 428 Mass. 124, 127 (1998) (spoliation sanction appropriate where reasonable person would realize that evidence might be relevant to possible action). "In the spoliation context . . . a judge has broad discretion to impose a variety of sanctions against the defendant for the breach of [a] statutory duty . . . ." *Keene* v. *Brigham & Women's Hosp., Inc., supra* at 235. "[E]xclusion of evidence both sanctions the party responsible for destroying certain evidence and remedies the unfairness that such spoliation

created." *Gath* v. *M/A-Com, Inc.*, 440 Mass. 482, 488 (2003). See *Kippenhan* v. *Chaulk Servs., Inc., supra* at 128 (exclusion of evidence as sanction for spoliation is "minority position"; most jurisdictions only allow trier of fact to draw unfavorable inference from spoliation of evidence). However, the sanction should be narrowly "addressed to the precise unfairness that would otherwise result." *Keene* v. *Brigham & Women's Hosp., Inc., supra* at 235, quoting *Fletcher* v. *Dorchester Mut. Ins. Co., supra* at 550.

In this case, the judge did not abuse her discretion by ruling that the defendants, without documentary support, could not challenge the plaintiff's calculations or assert that the plaintiff was overpaid. See *Gath* v. *M/A-Com, Inc., supra* at 491 (spoliation sanction reviewed under abuse of discretion standard). The judge found that the defendants were on notice of the plaintiff's claim when they received the letter from the plaintiff's attorney in 2000, "within weeks" of the plaintiff's leaving the defendants' employ. That letter not only notified them of a potential claim for commissions, but also requested employment records, which still existed at the time the letter was sent. The judge found that the defendants nevertheless destroyed the documents, offering as their only excuse that they did not think the plaintiff would be filing a claim against them.[11] Despite the defendants' assertion that the lost records, in any event, did not contain any relevant information, there is support in the record for the judge's finding that the records contained "commission statements and worksheets used to calculate commissions." See *Keene* v. *Brigham & Women's Hosp., Inc., supra* at 237 (absent evidence to contrary, judge entitled to make adverse inference that missing records would aid plaintiff's case).

The judge was correct in holding that the destruction of the documents unfairly prejudiced the plaintiff, both in proving her

[11]In their opposition to the motion for sanctions (and at oral argument) the defendants asserted that the paper records were lost or destroyed by the closure of their Boston office. There is nothing in the record to support this claim. The affidavit to which the defendants referred in support of their assertion does not state that the reason the records were lost was because of the closure of the office. However, even if it were true, it is of little assistance to the defendants, given that they had a statutory duty to maintain the records and were on notice that there was a potential claim against them.

case and in refuting the defendants' claims that she was overpaid. In addition, the destruction of the documents put an unfair burden on the plaintiff to show what the documents would have shown if they were produced. Moreover, the defendants had a statutory duty to maintain records relevant to payment of wages. In these circumstances, there was no abuse of discretion. See *Keene* v. *Brigham & Women's Hosp., Inc., supra* at 237 (concluding default against hospital that lost records critical to plaintiff's case appropriate).[12]

b. *Summary judgment.* We need not belabor a discussion of the appropriateness of summary judgment. The defendants' only argument is that it was not appropriate for the court to sanction them for spoliation, which we have addressed. The record does not contain copies of all the documents that the plaintiff submitted in support of her motion for summary judgment, including her affidavit. What is in the record before us are copies of commission statements that support her assertion of how her commissions were calculated. Moreover, the defendants only contest the appropriateness of the sanction for spoliation and the awarding of treble damages and attorney's fees (discussed *infra*). Viewed in the light most favorable to the defendants, without testimony concerning the defendants' challenge to the plaintiff's calculations, all that was before the judge were mere assertions by the defendants concerning the terms of the oral contract.

---

[12]At oral argument counsel for the defendants asserted that the judge did not, before imposing sanctions for spoliation on the defendants, hold an evidentiary hearing concerning the reasons the documents were lost, especially concerning what had happened to the defendants' computer. There was a hearing on several motions, including the motion for sanctions, on March 5, 2003. In an opposition to the plaintiff's motion for sanctions, the defendants explained the reasons the documents were destroyed, including a move out of the Boston office. See note 7, *supra*. In support of their opposition, the defendants submitted excerpts from depositions of, inter alia, the plaintiff and O'Mara, as well as an affidavit from O'Mara and two affidavits from an individual who was hired in October, 2001, as the operations manager and who discovered that computer records could not be retrieved. O'Mara stated in his affidavit that he discussed the error made in calculating the plaintiff's commission with her, and in their opposition to the plaintiff's motion for sanctions, the defendants argued that they made a bookkeeping error. Given that the defendants presented this evidence to the judge, were heard, and had their counsel argue that the missing documents had no bearing on the case, it is not clear how the absence of a formal evidentiary hearing denied the defendants an opportunity to explain the loss of the documents.

*LaLonde* v. *Eissner*, 405 Mass. 207, 209 (1989) (although court views evidence in summary judgment in favor of nonmoving party, "opposing party cannot rest on . . . mere assertions of disputed facts"). We agree with the judge that, in light of the sanctions ordered, there remained no genuine issue of material fact concerning the commissions owed the plaintiff and that she was entitled to judgment as a matter of law. *Anderson St. Assocs.* v. *Boston*, 442 Mass. 812, 816 (2004), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991) ("The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law"). See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

c. *Treble damages and attorney's fees*. The defendants also argue that the weekly wage law does not apply to this case because the commissions owed the plaintiff were not "definitely determined" as required by the weekly wage law and, therefore, the judge erred in awarding treble damages and attorney's fees pursuant to G. L. c. 149, § 150. In support of their argument that the amount owed the plaintiff was not definitely determined, the defendants rely solely on the fact that they disagree with the plaintiff over how her commissions should have been calculated and whether the plaintiff was overpaid. However, in light of the sanction for spoliation of evidence, the defendants have no factual basis for their assertion. See *Fletcher* v. *Dorchester Mut. Ins. Co.*, 437 Mass. 544, 550-551 (2002) (exclusion of evidence may be dispositive of merits of case).

In addition, the defendants concede that the only difference between the parties concerning the amount of commission due the plaintiff hinges on their claim that group payroll should always have been deducted before the commissions were determined. There is no dispute concerning the total from which deductions would be taken or about the other applicable formulas and deductions, thus making the amount owed the plaintiff arithmetically determinable. We conclude that the amount owed the plaintiff is definitely determined and, therefore, the weekly wage law applies. See generally *Boston Police Patrolmen's Ass'n* v. *Boston*, 435 Mass. 718, 719-720

(2002), quoting *Champagne* v. *Champagne*, 429 Mass. 324, 326 (1999) (we interpret statutory language according to intent of Legislature ascertained from its words considered in context of statute's purpose). Cf. *Cumpata* v. *Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 168 (D. Mass. 2000), citing Klint *vs.* J.& J. Assocs., Middlesex Superior Court, No. 97-0251 (Sept. 3, 1998) (holding that commissions were not within scope of weekly wage law, where interpretation of written contract was in dispute).

The defendants do not argue that, even if this court concludes that the amount owed the plaintiff is definitely determinable, the award of attorney's fees and costs and treble damages was unjustified. However, we examine whether, as a matter of law, the judge was correct in her belief that she was required to award treble damages to the plaintiff. See *Commonwealth* v. *Cintolo*, 415 Mass. 358, 359 (1993) (statutory interpretation is question of law).

General Laws, c. 149, § 150, states, in relevant part:

> "Any employee claiming to be aggrieved by a violation of section 148 . . . may . . . institute and prosecute in his own name . . . a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of litigation and reasonable attorney fees."[13]

In awarding the plaintiff treble damages, the judge cited to a number of cases adjudicated in the trial courts to support her conclusion that the statute did not allow her discretion in this regard.

However, there is nothing in the plain language of the statute that requires an award of treble damages. The text of the statute states only that a plaintiff "may" institute a suit for damages that includes a request for treble damages. See *Brittle* v. *Boston*,

---

[13]We conclude, and neither party argues otherwise, that the plain language of the statute, with its use of "shall," required the judge to award the plaintiff attorney's fees. Moreover, the defendants do not argue that the judge's award of attorney's fees was unreasonable.

439 Mass. 580, 594 (2003) ("may" is permissive, not mandatory). Cf. *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983) ("shall" is interpreted as imposing mandatory obligation). Because the plain language of the statute does not require a judge to award treble damages, we decline to create such a requirement and conclude that such an award is in a judge's discretion. Our conclusion is similar to the conclusion in *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. 165, 178-179 (2000), and cases cited. In the *Goodrow* case, the plaintiff argued that G. L. c. 151, § 1B, which states that any person paid less than the requisite overtime "may recover . . . three times the full amount," should be interpreted to mean that the plaintiff could request treble damages but that once the request was made, the award was mandatory. *Id.* at 178. The court stated that treble damages are punitive in nature, allowed only where authorized by statute, and appropriate where conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Id.*, quoting *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 17a (1998). In the absence of factors that would make treble damages appropriate, the court affirmed the judge's decision denying such punitive damages. *Id.* at 179. Cf. *Hampshire Village Assocs.* v. *District Court of Hampshire*, 381 Mass. 148, 149, cert. denied sub nom. *Ruhlander* v. *District Court of Hampshire*, 449 U.S. 1062 (1980) (discussing G. L. c. 186, § 15B, which provides that tenant "shall be awarded [treble] damages").

Our conclusion comports with underlying purpose of the statute, because a judge may award treble damages if they are warranted. Here, the judge awarded treble damages under the erroneous impression that they were mandatory, without exercising any discretion in the matter. Our conclusion should not be interpreted to mean that we conclude that treble damages necessarily are inappropriate in this case. Such a determination is in the discretion of the judge. Accordingly, we vacate the award of treble damages and remand the issue for the judge's reconsideration whether treble damages are warranted.

4. *Liability of Bruce Higginbotham.* The judge held all the individual defendants, including Higginbotham, liable as employers under the weekly wage act. General Laws c. 149,

§ 148, states in relevant part: "The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers . . . within the meaning of this section. . . . Whoever violates this section shall be punished . . . ." There is no question, nor do the defendants claim, that under the plain language of the statute, individuals may be held liable. G. L. c. 4, § 7, Twenty-third ("whoever" same as "[p]erson"); *Opinion of the Justices,* 163 Mass. 589, 596 (1895) (liability of individuals under weekly wage law is constitutional).

The defendants do not dispute that Harvey and O'Mara are "employers" who would be liable under the statute. Harvey, as president and treasurer, and O'Mara, who the defendants admit ran the company, are liable under the plain language of the statute. Concerning Higginbotham, the judge found, inter alia, that he admitted that he held a management role with the company, that he was promoted to district manager, and that the defendants acknowledged, in a joint pretrial memorandum, that he was the general manager and managed the entire office. The defendants argue that Higginbotham is not an officer of the corporate defendant within the meaning of the statute.

Although the Legislature has not defined all of the applicable terms in this provision of the statute, we assume that the Legislature has adopted the common meaning of such terms. *Goodrow* v. *Lane Bryant, Inc., supra* at 170. We focus on whether Higginbotham had the "management of such corporation." In *Goodrow* v. *Lane Bryant, Inc., supra* at 169, 172-173, the court determined that the plaintiff's title of manager did not make her a "bona fide executive" exempt from overtime provisions of G. L. c. 151, § 1A (3). In the absence of legislative history, the court relied on the common meaning of the statute's words and determined that a manager is someone who controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation. *Id.* at 173. We apply those same definitions to the words of this statute.

On the record before the judge, it is clear that Higginbotham had a management role, that the plaintiff reported to him, and

that he was aware of her compensation package. However, we conclude that, as a matter of law, there was insufficient evidence to determine that Higginbotham directed and participated to a substantial degree in formulating the corporation's policy. *Id.* Merely holding a managerial position over some branch, division, or office of a corporation does not, by itself, mean that that manager has the "management" of the "corporation" as a whole. Accordingly, it was error to hold Higginbotham individually liable under the weekly wage law.

5. *Defendants' motion to amend their answer.* In November, 2002, the defendants filed a motion to amend their answer to add counterclaims, arguing that their omission was due to secretarial inadvertence.[14] They asserted counterclaims for abuse of process, claiming that when the plaintiff served the ex parte trustee attachment on the defendants' bank, the bank called in its line of credit, which caused the demise of the business.[15] The defendants also asserted that they had overpaid the plaintiff by $8,486.19 in commissions, and that her acceptance of that money amounted to conversion.[16]

In denying the motion, the judge stated that the motion was filed over a year after the deadline for motions pursuant to Mass. R. Civ. P. 15, 365 Mass. 761 (1974), after the conclusion of discovery, and only a few days before the matter was scheduled to be disposed. The judge rejected the defendants' excuse of "secretarial inadvertence," noting that the defendants had filed two answers with the same omission, including one filed on September 23, 2002.[17]

---

[14]The defendants claim that they previously had asserted their counterclaims in their answer to the first amended complaint and, therefore, the plaintiff was on notice and was not prejudiced. This assertion was also in their motion to amend and in their joint pretrial memorandum. The plaintiff claims that the defendants introduced new theories in the case by their counterclaims. We cannot evaluate the defendants' argument on the record before us, as the defendants did not include a copy of their previous answers to the plaintiff's complaint. Therefore, we do not consider the argument.

[15]The bank reported no funds or goods of the defendants in its possession, and the docket does not indicate that the defendants filed a motion to dissolve the attachment.

[16]Given our holding in this case, this counterclaim is moot.

[17]From the record before us, it appears that the amendments to the plaintiff's complaint concerned adding the three individual defendants.

The defendants argue that the judge abused her discretion in denying their motion to amend because they have a right to assert counterclaims (Mass. R. Civ. P. 13, as amended, 423 Mass. 1405 [1996]). The defendants' conclusory argument about their right to file a counterclaim pursuant to rule 13 does not address the issue whether the judge abused her discretion in denying their belated motion to amend. See generally *Commonwealth* v. *Andover*, 378 Mass. 370, 374 (1979) (single justice did not abuse discretion in denying "belated" motion for leave to file counterclaim, where, inter alia, motion was filed almost one year after action commenced).

The defendants also argue that the Superior Court tracking order does not trump the provision of rule 15(a) that leave to file amendments should be "freely given" when justice so requires. In support of their argument, the defendants rely on *Sullivan* v. *Iantosca*, 409 Mass. 796, 800-801 (1991) (motion to amend complaint should have been allowed; rule 15 and not Superior Court standing order should guide judge's decision). In the *Sullivan* case, the court stated that there was no good reason to deny a motion to amend a complaint where trial was not imminent, discovery was incomplete, no prejudice to the defendant was apparent, and the claim was based on the same facts as a claim in the previous complaint. *Id.* Cf. *Greenery Rehabilitation Group, Inc.* v. *Antaramian*, 36 Mass. App. Ct. 73, 79 & n.7 (1994) (upholding denial of motion to amend complaint; stating that judge could consider delinquency of motion). Here, unlike the *Sullivan* case, discovery was concluded, and the defendants' sole excuse was secretarial inadvertence, which the judge rejected, given that they had filed more than one answer to the amended complaint. We cannot say the judge abused her discretion in these circumstances. See *Pielech* v. *Massasoit Greyhound, Inc.*, 441 Mass. 188, 196-197 (2004) (no abuse of discretion given lateness of motion to amend complaint, procedural permutations of case, and plaintiffs' ample opportunity to raise claim); *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 292 (1977) (when trial is imminent, judge "may give weight" to efficient operation of trial list).

*Conclusion.* For the reasons stated above, we affirm the grant-

ing of the motions for spoliation, summary judgment, and attorney's fees and costs. We vacate the judgment against Bruce Higginbotham, and we remand the case for reconsideration whether treble damages are appropriate.

*So ordered.*