McCann, John S., J.
INTRODUCTION
Counsel for plaintiff, Nicholas J. DeSantis - Paul M. Stein, Esq. Counsel for the defendants Commonwealth Energy System and COM/Energy Marketing, Inc. - Christopher Novello, Esq. and David S. Rubin, Esq.
The plaintiff, Nicholas J. DeSantis (DeSantis), filed a complaint against the defendants, Commonwealth Energy System (System) and COM/Energy Marketing, Inc. (CEM Co.), for breach of contract for non-payment of commissions and a derivative claim for violation of the Massachusetts Wage law, G.L.c. 149, §148 (Wage Act). Over the course of several days in November 2004, this case was tried to a jury regarding whether the defendants owed DeSantis commissions and whether the defendants made an agreement with De-Santis for a severance package. The case was presented to the jury in a series of nine special verdict questions which were crafted by the Court with the assistance of counsel. The jury returned a verdict for DeSantis and awarded him damages in amount of $79,598.10 for commissions.
The case was bifurcated and the following matters were reserved for the jury-waived portion of the trial: whether damages assessed and attributable to commissions would be tripled under the Wage Act; whether there was a diminution in the value of the retirement plans; and attorneys fees. Based on the jury’s responses to the special verdict questions, the Court ruled that the commissions were subject to the provisions of the Wage Act and trebled the damages to the amount of $238,794.30 pursuant to G.L.c. 149, §150. The Court further assessed, based on expert testimony, that the present value of pension benefit differential due to omitted commissions was $209,422.54. The Court also awarded DeSantis attorneys fees in the amount of $60,932.10 and costs in the amount of $2,346.55.
Thereafter, the defendants timely filed the instant motion for judgment notwithstanding the verdict pursuant to Mass.R.Civ.P. Rule 50(b), motion to amend judgment or, alternatively, motion for a new trial pursuant to Mass.R.Civ.P. Rule 59. DeSantis opposes the defendants’ request for judgment notwithstanding the verdict and a new trial. After hearing, and in consideration of the submissions of the parties, the defendants’ motions are DENIED for the reasons set forth below.
DISCUSSION
A. Defendants’ Request for Judgment Notwithstanding the Verdict
When considering a motion for judgment notwithstanding the verdict, the trial judge must determine whether the jury reasonably could return the verdict *473 for the plaintiff based on the presented evidence. Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 438 (1992) (internal citations omitted). The judge must take into account all of the evidence in its aspect most favorable to the plaintiff, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence. Id. It is the duly of the trial judge to set aside a verdict if he or she finds it greatly disproportionate to the injury proved after considering fairly and in an impartial and objective manner the applicable standards of reasonableness under the circumstances, or if the judge, in an exercise of sound judgment, believes letting the judgment stand would result in a miscarriage of justice. Statkus v. Metro. Transit Auth,, 335 Mass. 172, 174 (1956).
The trial judge is to consider “whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the non-moving party.” Cambridgeport Sav. Bank, 413 Mass. at 438 (internal citations omitted). Any inferences drawn from the evidence are to be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture. Id, See also, McNamara v. Honeyman, 406 Mass. 43, 45-46 (1989).
The defendants’ motion challenges the sufficiency of the evidence as to DeSantis’ breach of contract claim on which the jury found for DeSantis. First, the defendants argue that they were entitled to judgment on the breach of contract claim because there was no evidence that commissions were to be paid at the time contracts were sold by DeSantis. Second, they argue that the evidence was insufficient to prove that the Wage Act was applicable to the facts, in that the evidence did not establish that the commissions were definitely determined and had become due and payable. The Court will address these issues in turn.
1. Breach of Contract
The defendants argue that the Court should direct a verdict in their favor on the breach of contract claim because the evidence did not establish that commissions were supposed to be paid at the time contracts were sold. This Court disagrees. There was evidence from which the jury could reasonably conclude that, according to the terms of DeSantis’ employment, commissions were due and payable when DeSantis booked a sales contract. The evidence presented to the jury included the language of DeSantis’ offer letter and his reply letter, the nature of trading natural gas commodity futures, CEM Co.’s method of recording contracts and its calculation of commissions based on this method, and the business practice of paying commissions prior to the gas being “flowed.” Accordingly, the jury could reasonably have found that commissions were to be paid when the gas contracts were booked and that the defendants breached their contract with DeSantis by not timely paying him such commissions. Therefore, the jury’s finding that DeSantis earned commission when a customer signed a gas contract was supported by the evidence.
The defendants also make an argument based on the affirmative defense of accord and satisfaction. Specifically, the defendants contend that DeSantis should be precluded from recovering commissions due prior to February 1999 because DeSantis accepted payment in the amount of $14,268.00 from CEM Co. in June 1999 for past commissions. Construing the evidence in the plaintiffs favor, this court finds that a reasonable jury could conclude that DeSantis did not accept the payment as a settlement agreement regarding all of the outstanding commission and that such payment was a partial payment for past due commissions. Evidence supporting this conclusion include the inference that DeSantis did not forfeit his claim against the defendants upon receipt of the payment included that the defendants were aware of DeSantis’ claims for $79,000.00 in commissions, as the commissions were well-documented since October 1998, and that DeSantis did not file suit regarding the commissions until July 1999, a month after his receipt of the payment.
2. The Wage Act
In support of their motion, the defendants also contend that because there was insufficient evidence upon which a reasonable jury could find that the defendants’ breached the contract, DeSantis’ derivative Wage Act claim must also fail. However, as stated above, this Court finds that there was sufficient evi7 dence that a reasonable jury could find for DeSantis in his breach of contract claim. Therefore, this Court also finds that there was sufficient evidence for the jury to conclude that the circumstances warranted the Court’s application of the Wage Act.
The Massachusetts Wage Act, G.L.c. 149, §148, includes as “wages” commissions that are “definitely determined” and have “become due and payable.” Generally, these commissions are those which are a significant part of the weekly or regular compensation of an individual and are substantially relied upon on a weekly or regular basis. Id, As addressed by the Court in an earlier summary judgment motion, this Court observed that although the Wage Act usually is not viewed as applicable to commissions, the factual circumstances here created a question of fact concerning the terms of the agreement relating to commissions. As a result, the jury was posed with four special verdict questions addressing DeSantis’ commissions. The jury found, as illustrated by its responses to the special verdict questions, that the defendants’ commissions warranted application of the Wage Act. The jury was asked whether sales commissions were a significant part of DeSantis’ salary, whether commissions were or should have been paid on a weekly, bi-weekly, monthly, or regular basis, and whether commissions were due and payable at the time such *474 commissions should have been paid. The jury answered “yes” to each question. By answering each question affirmatively, the juiy indicated that the factual circumstances underlying the breach of contract claim established that the commissions fell within the scope of the Wage Act.
Here, the jury found that the defendants owed DeSantis commissions when each customer signed a gas contract. Giving DeSantis the full benefit of all facts and inferences therefrom that might be found by the jury, this evidence was sufficient for a reasonable jury to conclude that DeSantis’ contract bookings were “definite” to “determine” his commissions within the meaning of the Wage Act and were therefore, “due and payable” at the time each contract “sale” was made and booked. Therefore, there was legal justification for the Court to apply the Wage Act to DeSantis’ claims. Consequently, the defendants’ motion for a judgment notwithstanding the verdict on the Wage Act claim must fail.

B. Defendants’ Requestfor Alternative Relief

As a result of this Court’s denial of judgment notwithstanding the verdict, the Court addresses the defendants’ requests for alternative relief as follows.
1. Pension Damages
The defendants argue that the Court should not have awarded DeSantis pension-related damages related to the underpayment of commissions because any such claim should have been preempted by the Employee Retirement Income Security Act of 1974 (ERISA). However, for the following reasons, this Court determines that there is no issue as to the administration or the type of benefits provided by an ERISA plan and therefore, pension damages were appropriately awarded. See, e.g., Pace v. Signal Technology Corp., 417 Mass. 154, 159-60 (1994) (plaintiffs claims not preempted by ERISA because plaintiff did not seek benefits under a plan and any award against defendant would not directly affect the administration of benefits under the plan).
DeSantis’ total damages against the defendants are measured by the face amount of the omitted commissions and include, in part, the loss of monthly pension benefits. The only issue for this Court turns on the disputed actuarial opinion as to the lump sum present value amount of the pension benefit reduction due to the defendants’ underpayment of DeSantis’ commissions. As a result, this Court is not required to interpret any Plan Documents to determine DeSantis’ benefits. See Leyland v. Plymouth & Brockton St. Ry. Co., 44 Mass.App.Ct. 427, 431 (1998) (claim for employer’s wrongful cancellation of ERISA life insurance benefit presented no ERISA question because plaintiffs claim required no interpretation of the plan and had no effect on liability of the plan as an entity or on the administration of the plan). Here, DeSantis’ pension benefit was merely a measure of damages incidental to his state law claim for breach of contract. See, e.g., Ventresco v. Liberty Mutual Ins. Co., 55 Mass.App.Ct. 201, 209-11 (2002) (affirming award of lost pension benefits as recoverable damages in a state law Chapter 15IB employment discrimination case). Therefore, this Court’s determination of the present value of DeSantis’ pension benefits has no connection or relevancy to any “state laws” preempted by ERISA.
2. Treble Damages Pursuant to the Wage Act
The defendants also argue in a supplemental motion that this Court must reconsider its trebling of the juiy’s verdict award pursuant to the Wage Act. This claim rests on the assertion that the Supreme Judicial Court’s ruling in Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 709-10 (2005), which was decided four months after this Court’s memorandum and order on a bifurcated juiy trial, alters the Court’s ability to award treble damages pursuant to G.L.c. 149, §150. The defendants also argue that pursuant to Wiedmann, they are entitled to a new trial.
General Law, c. 149, §150, states, in relevant part:
Any employee claiming to be aggrieved by a violation of section 148 . . . may institute and prosecute in his own name ... a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of litigation and reasonable attorney fees.
In Wiedmann, the Supreme Judicial Court held that the Wage Act’s treble damages provision is not automatic. The court determined that a finding must be made that the defendant’s conduct has been “outrageous, because of the defendant’s evil motive or his reckless indifference to the rights of others.” Id. at 710. Therefore, the Court must address whether the circumstances of this case warranted the imposition of treble damages under Wiedmann.
This Court finds that the evidence presented at trial established that the defendants knowingly and wilfully disregarded the rights of the plaintiff to receive commissions in a timely fashion. The weight of the evidence suggests that the defendants knew that De-Santis was to be paid due commissions each month, but that they intentionally withheld payment of such commissions. At trial, the defendants presented evidence suggesting that the defendant companies were under-funded due to the start-up status of CEM Co., and therefore, they could not timely or readily pay DeSantis commissions payments as they became due. However, this Court does not give merit to the defendants’ excuse. Although CEM Co., was a new business entity, it was a subsidiary of System and was managed by experienced employers, i.e., Robert Bucknell, Vice President of Sales for CEM Co. and former supervisor at System.
Furthermore, the defendants’ suggestion that a new trial is necessary to determine the appropriate *475 ness of the Court’s trebling of the juiy awarded damages is not persuasive. First, the Court acknowledges that the defendants, as part of the bifurcated trial, agreed that the issue of whether damages assessed by the juiy and attributable to commissions would be tripled under the Wage Act would be reserved for the Court. As a result, this Court determines that the present issue regarding the appropriateness of tripling the damages award in accord with Wiedmann is directly connected to this issue and is therefore, not a juiy issue. Also, Wiedmann was presented to the Supreme Judicial Court as an issue regarding the trial judge’s granting of summary judgment. Id. at 700. Despite the court’s holding that the treble award provision of the Wage Act is not automatic, the Supreme Judicial Court did not vacate the judgment for a new trial, but instead remanded the issue of treble damages for the trial judge’s reconsideration. Id. at 710. Therefore, it is clear that the award of treble damages in the instant case remains in this Court’s discretion. Id. at. 710 (“[s]uch a determination [of treble damages] is in the discretion of the judge").
For the above-stated reasons, this Court finds that the defendants knew DeSantis was entitled to commissions and recklessly disregarded his right to such commissions. Therefore, treble damages are warranted.
C. Defendants’ Request for a New Trial
Massachusetts Rule of Civil Procedure 59(a)(1) allows a judge to grant a new trial “for any reason which new trials have heretofore been granted in actions at law in the courts of the Commonwealth.” Mass.R.Civ.P. 59(a)(1). Nevertheless, a trial judge should not grant a new trial unless failure to do so appears inconsistent with substantial justice and affects the substantial rights of the parties. Int’l Totalizing Sys., Inc. v. PepsiCo, Inc., 29 Mass.App.Ct. 424, 438 (1990); see also, Galvin v. Welsh Mfg. Co., 382 Mass. 340, 343 (1981). It is within the trial judge’s discretion to grant or deny a motion for a new trial. W. Oliver Tripp Co. v. Am. Hoechst Corp., 34 Mass.App.Ct. 744, 748 (1993). The trial judge is to determine whether the verdict is so markedly against the weight of the evidence as to suggest that the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to a reasonable conclusion. Id., quoting Scannell v. Boston Elev. Ry., 208 Mass. 513, 514-15 (1911).
In this case, the defendants argue that they are entitled to a new trial on the plaintiffs commission claim and derivative Wage Act claim on the grounds that the jury’s findings were against the evidence and contrary to applicable law. As discussed above, the juiy’s verdict is supported by the weight of the evidence on those matters. Furthermore, the weight of the evidence points to the fact that the defendants’ breach of contract was causally connected to the plaintiffs loss. There is also no evidence that the juiy misunderstood or misapplied the governing law of contracts. Accordingly, this Court finds that the juiy’s conclusion was not so devoid of evidence that it must be set aside and the defendants’ motion for a new trial is denied.
ORDER
It is therefore ORDERED that the defendants’ combined motion for judgment notwithstanding the verdict, motion to amend the judgment, or, in the alternative, motion for new trial is DENIED.