Gardner, J.
Aggrieved by the trial judge’s allowance of the plaintiff’s motion for summary judgment, the defendants commenced this appeal in accordance with the Dist./Mun. Cts. R. A. D. A., Rule 8C.[2]
Suit was commenced in the Worcester Division of the District Court Department by William Allen (“Allen”) against Intralearn Software Corporation (“Intrale-arn”), Gerald F. Goguen (“Goguen”) and Donald S. Wilson, Jr. (‘Wilson”). Allen seeks payment for wages in the amount of $23,819.00 that he alleges were not paid to him as an employee by Intralearn, in violation of G.L.c. 149, §150. He further alleges pursuant to G.L.c. 149, §148, that the president and treasurer, and any officers having the management of a corporation, shall be deemed to be employers within the meaning of the law. Allen brought suit against Goguen and Wilson, *72 in their individual capacities, .pursuant to G.L.c. 149, §§148 and 150. In order to prove that the defendants violated Massachusetts weekly wage laws, the law required that Allen prove that: (1) he was an “employee” as defined in G.L.c. 149, §148; (2) his deferred compensation constituted a “wage” under the act; (3) the defendants violated the act by not paying Allen his “wages” earned in a timely manner; and (4) the individual defendants (Goguen and Wilson) were corporate officers as defined in the statute.[3]
The plaintiff filed a motion for summary judgment dated January 13, 2004, and requested payment of wages in the amount of $23,819.00. The defendants claimed in their pleadings in opposition to the summary judgment motion that Allen had agreed with Intralearn to accept a reduced salary during the one year period prior to his voluntary termination. Also, they dispute that they failed to meet Allen’s proposed compensation plan.
It is uncontraverted in the affidavits, which the motion judge had at the motion hearing, that this dispute between the parties began in the summer of 2002, when Intralearn notified its employees that it was experiencing financial difficulties As a result of its financial condition, Intralearn offered its employees the option of being laid-off, or accepting a reduction in salary.
The parties’ versions of the facts as presented in their respective pleadings diverge hereafter. Allen admits in his affidavit dated January 10,2004, that he verbally accepted a ten percent (10%) pay cut in lieu of being laid-off. Also, he asserts in his affidavit that he “continued to work at Intralearn until July 10, 2003, receiving only fifty percent (50%) or less of the wages which were due. ...”[4] to him each pay period. Allen asserts that he understood that the remainder of his wages would accrue and would be paid to him when the company was in a better position financially; however, he acknowledges in his affidavit that he never signed any agreement to defer his wages with Intralearn.
Intralearn and the individual defendants claim in Wilson’s affidavit[5] dated February 3, 2004 that was filed in opposition to the motion for summary judgment, that Intralearn offered all the employees a modified compensation plan, referred to as the “312 Plan.” The defendants claim that Allen made a verbal agreement with Intralearn to enroll in the 312 Plan, whereby, “the company would provide ... at least half [his] salary on an ongoing basis.” Tire defendants deny that they had ever agreed to compensate Allen with the other half of his salary at any time, regardless of how the company was doing financially. They also assert in the Wilson affidavit that Allen in his email of Sunday, February 16,2003, admitted that he had “complied with the company’s abrogation of its contractual arrangement... understanding its intention to pay all accrued, unpaid back-salary....”
While the defendants claim that they never agreed to provide Allen with back-pay for compensation deferred, an unsigned and undated letter to the plaintiff indicates otherwise.[6] The letter on Intralearn stationery was sent to Allen in connection with his voluntary termination as of July 10, 2003. The letter states: “In lieu of all past compensation not paid as of your separation date, for which Intralearn Soft *73 ware Corp. acknowledges sole responsibility, the Company agrees to the future payment of the sum of $23.819.20 (emphasis in original).” There is also a footnote to reference an attached schedule for details, which indicated the amount of money Intralearn owed to him for past compensation.
On March 5,2004, the motion judge allowed the plaintiffs motion for summary judgment. On April 12, 2004 the motion judge signed an Order, stating the following:
It appears that I have no discretion. I award $71,457.00 in damages and attorney fees in the amount of $8,000.00 dollars. Costs are to be determined by the Clerk-Magistrate’s Office. The judgment is assessed jointly and severally to Intralearn Software Corporation and Gerald F. Goguen and Donald S. Wilson, Jr.
On March 22,2004, the defendants filed a timely Notice of Appeal, claiming that there were genuine issues of material fact in the case that should have prevented summary judgment.
“The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all materials fact have been established and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. R, Rule 56(C).” Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). A judge must be careful not to assume the function of the fact finder by passing on the credibility of the witnesses or evaluating the weight of the evidence, Attorney General v. Brown, 400 Mass. 826, 832 (1987), or by granting a motion for summary judgment merely to save the time and expense of a trial. See Hub Associates, Inc. v. Goode, 357 Mass. 449, 452 (1970). The moving party has the burden of affirmatively demonstrating that the pleadings present no genuine issue of fact on every material issue. And the moving party bears this burden even though it would not have the burden of proof on said issues at trial. Attorney General v. Bailey, 386 Mass. 367, 371 (1982). The party opposing the motion must not rest upon “mere allegations or denials of his pleadings,” but must set forth specific facts that show there is a genuine issue of fact for trial. See Mass. R. Civ. R, Rule 56 (e). “The possibility that the party opposing a motion for summary judgment may elicit something helpful on cross-examination of witnesses cannot defeat the motion, particularly if there is no indication of what specifically is to be elicited.” Thompson v. Commonwealth, 386 Mass. 811, 815 (1982). The Appellate Division’s review of the correctness of the trial judge’s ruling involves the same standard used initially by the trial justice, and we may consider any ground for supporting the judgment. See Champagne v. Commissioner of Correction, 395 Mass. 382, 386 (1985) . Under Mass. R. Civ. R, Rule 56, the evidence to be reviewed by the motion judge includes “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any....” The Supreme Judicial Court in Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), held that although the moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim, the motion must be supported by one or more of the materials listed in Rule 56(c) that demonstrate that proof of an essential element of the other party’s claim, of which the other party would have the burden of proof at trial, is unlikely to be produced by said party.
It is clear from the language of the weekly wages law, which the defendants do not contest, that Allen was a salaried employee.[7] Massachusetts General Laws, c. 149, §148, is explicit in its definition of a “salaried employee.” That statute states that a “‘salaried employee’ shall mean any employee whose remuneration is on a’ *74 weekly, bi-weekly, semi-monthly, monthly or annual basis, even though deductions or increases may be made in a particular pay period.”
The defendants made two distinct arguments in their efforts to defend the action against them. First, the defendants claim that Allen accepted the offer to enroll in the 312-Plan, and thereby agreed to continue to work for the company for at least fifty percent (50%) of his annual salary. However, they fail to acknowledge that Allen’s email also states that the agreement between the parties provided for the company “to pay all accrued, unpaid back-salary at a rate and in a time frame not yet communicated to employees.”
As an alternative argument, the defendants contend that compensation for Allen’s past performance did not constitute “wages,” and therefore, they did not violate the weekly wages law. However, it is clear from the letter sent to Allen (and the pay chart annexed to it) that compensation owed to Allen was based upon Allen’s performance of his job. Commonwealth v. Savage, 31 Mass. App. Ct. 714, 716 (1991). In fact, the letter states that “[cjompensation related payments will be reported as 1099 Income, and you agree to make all appropriate tax payments.” We conclude that the money owed to Allen constituted “wages” and therefore, he had a statutory right to receive those wages in accordance with the weekly wages law. It is clear from these admissions that Allen was owed approximately $24,000 in back-pay at the time of his voluntary termination.
Because we deem the deferred compensation owed to Allen to be wages, it is clear and there is no dispute that Intralearn did not pay Allen the wages that he earned in a timely fashion, as required by statute. Massachusetts General Laws Chapter 149, section 148 requires that “any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday[.]” Refusing to pay Allen as provided by law was a violation of the statute.
Allen does not specifically allege in his affidavit that Wilson is an officer “having management of the corporation!.]” See G.L.c. 149, §148. However, Wilson, who held the title of Chief Operating Officer, admits in his deposition[8] that he prepared the undated letter notifying Allen of the wages owed to him at the time of his voluntary departure. In addition, in the defendants’ affidavit in opposition to the motion for summary judgment, Wilson and the other two defendants never denied that Wilson had any responsibility for the “management of such corporation].]” G.Lc. 149, §148. Allen has presented sufficient evidence that Wilson, as the Chief Operating Officer of the corporation, was an employer as defined under the weekly wage law. Goguen was the president and treasurer of Intralearn, and therefore, is deemed to be an employer under the statute. See G.L.c. 149, §148.
Additionally, the defendants violated the wage act on another ground. The statute mandates that “]n]o person shall by a special contract with an employee or by any other means exempt himself from this section or from section on hundred and fifty.” G.L.c. 149, §148. In the letter drafted by Wilson in connection with Allen’s voluntary termination, the last paragraph makes Allen’s receipt of his wages contingent upon his confidentiality of the agreement.[9] This is not permissible under the statute.
While we hold that the trial judge did not err in entering summary judgment for plaintiff Allen, we find that the judge erred as a matter of law in stating that he had *75 no discretion but to award treble damages against the defendants. See Wiedmann v. The Bradford Group Inc., 444 Mass. 698, 700 (2005).[10] Massachusetts General Laws, c. 149, §150, states, in pertinent part that “an employee claiming to be aggrieved by a violation of section 148... may... institute and prosecute in his own name... a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of litigation and reasonable attorney fees.” While this statute has previously been interpreted in the trial courts and in the appeals courts to mandate treble damages, “there is nothing in the plain language of the statute that requires an award of treble damages. The text of the statute states only that a plaintiff ‘may* institute a suit for damages that includes a request for treble damages.” Wiedmann, 444 Mass. at 709. The Supreme Judicial Court has made it clear that the award of treble damages is in the judge’s discretion. Id. at 710. Therefore, the judge erred as a matter of law in determining that he had no discretion not to award treble damages.
We affirm the trial court’s granting of summary judgment in favor of the plaintiff as to liability of the three defendants; however, we return the case to the motion judge for further hearing consistent with these findings.
So ordered.

 The defendants filed a notice of appeal with the District Court, but did not specify which Dist./Mun. Cts. R. A D. A. method of appeal rule under which they were proceeding. However, in their notice of appeal, the defendants requested that the clerk order a cassette copy of the electronic recordings of the trial proceedings, which seems to imply that the defendants wished to proceed pursuant to Dist./Mun. Cts. R. A. D. A, Rule 8C. The plaintiff did not challenge the defendants’ appeal for lack of conformance to the Appellate Division rules to perfect an appeal.

 “The president and treasurer of a corporation and any officers or agents having the management of the corporation shall be deemed to be employers... within the meaning of this section.” G.L.c. 149, §148.

 Allen affidavit p. 2, App. at 28.

 It is significant to note that Wilson’s affidavit does not state that it was made based on personal knowledge. See Mass. R. Civ. E, Rule 56(e).

 Wilson admitted in his deposition that he prepared the letter in connection with discussions that Intralearn had with Allen regarding his voluntary termination.

 “Allen was initially employed... at a salary of $55,000.00 per year.” (App. at 73)..

 The motion judge had a portion of the Wilson deposition transcript at the hearing.

 Specifically, the last paragraph of the letter to Allen states: “You agree to keep confidential and not disclose the contents of this agreement and all information and terms related to your termination. Should you default on this commitment, it is your understanding and agreement that the company will have no further obligation for further payment of any kind or nature to you.”

The Motion Judge who decided the motion in 2004 did not have the benefit of the Wiedmann case, supra, that was decided on July 21,2005.