PETER G. COOK *vs.* PATIENT EDU, LLC, & others.[1]

Hampden. February 5, 2013. - June 13, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Labor,* Wages. *Statute,* Construction. *Limited Liability Company.*

This court concluded that a manager or other officer or agent of a limited li-
    ability company (LLC), limited liability partnership, or other limited li-
    ability business entity may be a person having employees in his service,
    and thus may be civilly or criminally liable for violations of the Wage Act
    if he controls, directs, and participates to a substantial degree in formulat-
    ing and determining policy of the business entity; therefore, a plaintiff
    employee's Wage Act claims against the defendant individual managers of
    an LLC should not have been dismissed. [550-556]

CIVIL ACTION commenced in the Superior Court Department on
September 10, 2010.

A motion to dismiss was heard by *Bertha D. Josephson,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Keith A. Minoff* for the plaintiff.

*Marwan S. Zubi* for the defendant.

The following submitted briefs for amici curiae:

*Shannon Liss-Riordan & Stephen S. Churchill* for Mas-
sachusetts Employment Lawyers Association.

*Martha Coakley,* Attorney General, *& Karla E. Zarbo,* As-
sistant Attorney General, for the Commonwealth.

*John Pagliaro & Martin J. Newhouse* for New England Legal
Foundation & another.

*David R. Kerrigan & Joseph P. Calandrelli* for Massachusetts
Defense Lawyers Association.

DUFFLY, J. We consider in this case whether managers of a
limited liability company (LLC) may be held individually liable

---

[1]Steven Graziano and Michael Schulman.

under the Massachusetts Wage Act, G. L. c. 149, §§ 148, 150 (Wage Act), for unpaid wages due to an employee.[2] Peter G. Cook filed suit against the defendants, Patient Edu, LLC (Patient Edu), and two of its managers, Steven Graziano and Michael Schulman,[3] for failing to pay more than $68,000 in compensation he claimed was owed to him under an employment contract. Concluding that G. L. c. 149, § 148, does not, by its plain language, impose individual liability on the managers of an LLC, a Superior Court judge granted the motion to dismiss filed by Patient Edu and Graziano, pursuant to Mass. R. Civ. P. 12(b)(6), 365 Mass. 755 (1974), and dismissed count one of the complaint against Graziano and Shulman. Cook appealed from the dismissal and we transferred the case to this court on our own motion. We conclude that a manager who "controls, directs, and participates to a substantial degree in formulating and determining" the financial policy of a business entity, see *Wiedmann v. The Bradford Group, Inc.*, 444 Mass. 698, 711 (2005), may be a "person having employees in his service" under G. L. c. 149, § 148, and thus may be subject to liability for violations of the Wage Act.

*Background.* We review the allowance of a motion to dismiss de novo, accepting as true all well-pleaded facts in the complaint and favorable inferences drawn therefrom. We also may take into account the materials attached thereto.[4] *Melia v. Zenhire, Inc.*, 462 Mass. 164, 165-166 (2012).

---

[2] We acknowledge the amicus briefs filed by the Attorney General and by the Massachusetts Employment Lawyers Association, Brazilian Immigrant Center, Brazilian Women's Group, Centro Presente, Chelsea Collaborative, Chinese Progressive Association, Massachusetts Coalition for Occupational Safety and Health, Massachusetts Immigrant and Refugee Advocacy Coalition, Massachusetts Jobs with Justice, Metrowest Worker Center, and Project Voice/American Friends Service Committee, in support of the plaintiff; and the amicus briefs filed by the New England Legal Foundation and Associated Industries of Massachusetts, and by the Massachusetts Defense Lawyers Association in support of the defendants.

[3] Schulman disputes that he was a manager of Patient Edu, LLC (Patient Edu).

[4] Attached to the complaint were, inter alia, a copy of Peter G. Cook's employment agreement, signed by Graziano on behalf of Patient Edu; a spreadsheet detailing the salary payments that Cook received; a complaint form filed with the Attorney General's fair labor division; and a letter from that office authorizing him to pursue a private cause of action. See G. L.

The complaint alleges that Graziano and Schulman were managers of Patient Edu, a Massachusetts LLC.[5] Cook entered into a written employment agreement with Patient Edu in December, 2008, according to which he would serve as Patient Edu's director of business development and strategic partner development for a base salary of $70,000 and a guaranteed draw of $30,000 annually. The agreement also provided for the reimbursement of business and travel expenses.[6] It was signed by Graziano, as president of Patient Edu. Cook worked for Patient Edu from January 5, 2009, through May 21, 2010, when he resigned. He did not receive any payment from Patient Edu during the first six months of his employment, and received salary checks "sporadically" thereafter. When he resigned, he was owed $61,538.56 in wages and $6,879.36 in unreimbursed expenses.[7,8]

*Discussion.* Cook filed an action under G. L. c. 149, § 150, which provides that "[a]n employee claiming to be aggrieved by a violation of" G. L. c. 149, § 148, may institute a private action for injunctive relief and damages, including treble damages. General Laws c. 149, § 150, does not separately define the class of people who may be subject to civil liability under G. L. c. 149, § 148. The first defendant named in Cook's action was the LLC, and the other two defendants were managers of the LLC. The issue whether Patient Edu is liable for unpaid wages under the Wage Act is not before us; the parties dispute only whether each individual defendant is a "person having

c. 149, § 150 (employee claiming to be aggrieved by violation of G. L. c. 149, § 148, may pursue private civil action ninety days after filing complaint with Attorney General or sooner if Attorney General provides written authorization).

[5]Under the Massachusetts Limited Liability Company Act, a limited liability company (LLC) may, but is not required to, designate natural persons or entities as managers. A manager need not also be a member of the LLC. G. L. c. 156C, §§ 24, 25.

[6]General Laws c. 149, §§ 148 and 150 (Wage Act), apply to "wages or salary earned" and "to the payment of commissions when the amount of such commissions . . . has been definitely determined and has become due and payable to such employee." G. L. c. 149, § 148. The issue whether unreimbursed expenses qualify as wages is not before us.

[7]Cook also brought claims against Patient Edu for breach of contract and for return of monies loaned. Those claims are not part of this appeal.

[8]Cook's counsel asserted at oral argument that Patient Edu has gone out of business and has sold all of its assets.

employees in his service" and thus also subject to liability. We therefore must determine whether the Legislature, in drafting G. L. c. 149, § 148,[9] intended the managers of LLCs to be liable for violations of that statute. See *Weems* v. *Citigroup Inc.*, 453 Mass. 147, 151 (2009); *Wiedmann* v. *The Bradford Group, Inc.*, *supra.*

We interpret statutory language "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Boston Police Patrolmen's Ass'n, Inc.* v. *Boston*, 435 Mass. 718, 719-720 (2002), quoting *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 487-488 (1984). "If a liberal, even if not literally exact, interpretation of certain

---

[9]General Laws c. 149, § 148, provides, in part:

"Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned . . . .

"This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of [G. L. c. 149, § 150]. . . .

"No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty. The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section. Every public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees, shall be deemed to be an employer of such employees, and shall be responsible under this section for any failure to perform his official duty relative to the payment of their wages or salaries, unless he is prevented from performing the same through no fault on his part. . . .

"Whoever violates this section shall be punished or shall be subject to a civil citation or order as provided in [G. L. c. 149, § 27C]."

words is necessary to accomplish the purpose indicated by the words as a whole, such interpretation is to be adopted rather than one which will defeat that purpose." *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court*, 448 Mass. 15, 24 (2006), quoting *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996).

The Wage Act "was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages." *Melia* v. *Zenhire, Inc.*, *supra* at 170, quoting *Cumpata* v. *Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000). See *Boston Police Patrolmen's Ass'n, Inc.* v. *Boston*, *supra* at 720, citing *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 147 (1959). Since it was first enacted in 1879 to ensure that municipalities paid "laborers" a minimum wage weekly, the Wage Act has gradually expanded in reach. See St. 1879, c. 128. At varying times, employees of particular industries were added to the class of those protected by the statute[10] until, in 1935, the Wage Act was amended to apply to all private employers. See St. 1935, c. 350.

General Laws c. 149, § 148, requires "[e]very person having employees in his service" to pay those employees their wages either weekly or bi-weekly (or on a less frequent basis in certain circumstances).[11] The Wage Act provides also that the president and treasurer of a corporation, as well as "officers or agents having the management" of the corporation, "shall be deemed

---

[10]See, e.g., St. 1909, c. 514, § 112 ("Every manufacturing, mining, or quarrying, mercantile, railroad, street railway, telegraph or telephone corporation, every incorporated express company or water company, and every contractor, person or partnership engaged in any manufacturing business, in any of the building trades, in quarries or mines, upon public works or in the construction or repair of railroads, street railways, roads, bridges or sewers, or of gas, water or electric light works, pipes or lines, shall pay weekly each employee . . ."); St. 1918, c. 87 (employers operating "hotel or club").

[11]"Every person" may describe natural persons or "corporations, societies, associations and partnerships." G. L. c. 4, § 7. In 1995, the Legislature enacted G. L. c. 156C, the Massachusetts Limited Liability Company Act, see G. L. c. 156C, § 1, and provided that "person," where such reference includes any partnership, "shall be deemed to include a limited liability company." G. L. c. 156C, § 63 (a).

to be the employers of the employees of the corporation within the meaning of this section." *Id.* This provision in effect imposes liability on the president and treasurer of a corporate employer, as well as on an officer or agent of the corporation who "controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation." *Wiedmann* v. *The Bradford Group, Inc.*, *supra* at 711. General Laws c. 149, § 148, also imposes individual liability for payment of wages upon "[e]very public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees" who fails to do so. In the various provisions setting forth those who may be held individually liable for payment of wages, however, the statute makes no explicit mention of managers of LLCs or managers of any other limited liability entity.

When the provision of G. L. c. 149, § 148, making corporate officers individually liable for payment of wages was added in 1932, see St. 1932, c. 101, § 1, the LLC did not exist as a form of business association. Although unincorporated entities, including proprietorships and general partnerships, existed during that period, the owners of such entities were subject to liability for business debts, including unpaid wages. Only corporate owners were entitled to limited liability. See generally E. Polubinski, Jr., & S.T. Freeland, Business Corporations §§ 2:1 to 2:13 (2012). The LLC was not an authorized form of business entity in the Commonwealth until 1996.[12] See G. L. c. 156C, inserted by St. 1995, c. 281, § 18.

We do not read these provisions of G. L. c. 149, § 148, as a legislative effort to single out for individual liability only the officers or managers of the specific types of entities mentioned in the statute. Rather, the inclusion of the provisions on corporate officer liability and public officer liability serves to illustrate the circumstances in which an individual may be deemed a "person having employees in his service" under G. L. c. 149, § 148.[13] Cf. *Massachusetts Bay Transp. Auth.* v. *Massachusetts Comm'n*

---

[12]Limited liability partnerships, another form of business organization that limits the liability of its owners, were authorized by the same act that authorized LLCs under Massachusetts law. See St. 1995, c. 281. See also G. L. c. 108A.

[13]The word "corporation" does not itself encompass other limited liability

*Against Discrimination*, 450 Mass. 327, 337 (2008) (list may "illustrate[] the types" of actions proscribed by a statute, but is not exhaustive). We therefore reject the defendants' argument that the corporate officer provision, by identifying only corporations, implicitly excludes managers of LLCs and other limited liability entities from the more general category of "person[s] having employees in [their] service." See *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975) (while it is "maxim of statutory construction . . . that a statutory expression of one thing is an implied exclusion of other things . . . we have also recognized that the maxim is not to be followed where to do so would frustrate the general beneficial purposes of the legislation"). We discern from the inclusion of the provisions regarding corporate and public officer liability a clear legislative intent to ensure that individuals with the authority to shape the employment and financial policies of an entity be liable for the obligations of that entity to its employees.

No reasonable legislative purpose would be served by holding "any officers or agents having the management of [a] corporation" accountable for violations of the Wage Act, but not the managers of other limited liability business entities who similarly control policies and practices related to the timely payment of employees. To interpret G. L. c. 149, § 148, so as to distinguish between such actors would produce a result at odds with the intent of the statute. See *Commonwealth* v. *Rahim*, 441 Mass. 273, 278 (2004).

We note that G. L. c. 149, § 148B, which prohibits the misclassification of employees as independent contractors, was amended in 2004 to provide that "[a]ny entity and the president and treasurer of a corporation and any officer or agent having the management of the corporation or entity shall be liable for violations of this section." See St. 2004, c. 193, § 26. Although "an amendment to a statute presumably intends a change in the law . . . [o]ften the Legislature may amend a statute simply to clarify its meaning." *Boyle* v. *Weiss*, 461 Mass. 519, 525 (2012), quoting *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 102-103 (1983). We can identify no intent to change the meaning of

entities. See *RCN-BecoCom, LLC* v. *Comm'r of Revenue*, 443 Mass. 198, 207 (2005).

the phrase "person having employees in his service" in G. L. c. 149, § 148, from any amendment to G. L. c. 149, § 148B, which at no time employed that phrase.[14]

Our decision in *Commonwealth* v. *Cintolo,* 415 Mass. 358 (1993), is not contrary to our holding in this case. In *Commonwealth* v. *Cintolo, supra* at 359, we determined that the president of a corporation could not be held criminally liable for a violation of G. L. c. 149, § 150C, a statute not implicated here. That statute sanctions employers who deduct sums from their employees' wages in order to purchase a group health insurance policy, but fail to maintain coverage for those employees. General Laws c. 149, § 150C, does not contain a corporate officer liability provision.[15] Thus, it is unclear whether the Legislature intended that individuals such as the defendants should be subject to criminal liability. Because a criminal statute must be strictly construed against the State if there is "doubt as to its meaning or the intention of the [L]egislature," *id.,* we held that the defendant president was not an employer under G. L. c. 149, § 150C.

Even were we to assume, without deciding, that the rules of lenity and strict construction must be applied when interpreting

---

[14]The defendants point to legislation, proposed in 2011, that would have amended the corporate officer provision of G. L. c. 149, § 148, to include LLCs, limited liability partnerships, and other entities. This proposed amendment was not enacted. We do not draw conclusions concerning the intent of the Legislature based on the failure to enact a subsequent amendment. See *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.,* 371 Mass. 186, 193-194 (1976) ("Such inaction by a subsequent legislative body 'has no persuasive significance' with reference to the intent of the Legislature which passed the original bill").

[15]The legislative history of G. L. c. 149, § 150C, sheds little light on whether the Legislature intended to hold individual managers of limited liability entities, in addition to employing entities, liable for violations of that statute, although it does make clear that the drafters did not intend that individuals such as payroll clerks, lacking actual managerial authority, be subject to liability. The original draft bill imposed liability on "[a]ny person who is responsible for the withholding of wages from employees . . . ." 1987 House Doc. 5831. The Governor proposed that the bill be amended to encompass "[a]ny person having employees in his service," because *"[t]he language as originally drafted also might penalize a person who was not responsible for the lapse of insurance.* The proposed amendment therefore clarifies that the person responsible under the act is the employer" (emphasis added). 1987 House Doc. 6255. The bill was enacted with the proposed amendment.

the language of a criminal statute that has been expanded to authorize civil suits by persons who have been aggrieved by violations thereof, we need not apply them in the present case. The legislative intent of the Wage Act, to hold individual managers liable for violations, is clear, and there is therefore no ambiguity. See *Commonwealth* v. *Chavis*, 415 Mass. 703, 707-708 (1993), quoting *Commonwealth* v. *Gagnon*, 387 Mass. 567, 569 (1982), cert. denied, 464 U.S. 815 (1983), quoting *Simon* v. *Solomon*, 385 Mass. 91, 102-103 (1982) (rule of lenity "is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants"). See also *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992) ("The maxim that penal statutes are to be strictly construed does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one").

*Conclusion.* Because a manager or other officer or agent of an LLC, limited liability partnership, or other limited liability business entity may be a "person having employees in his service," and thus may be civilly or criminally liable for violations of G. L. c. 149, § 148, if he "controls, directs, and participates to a substantial degree in formulating and determining policy" of the business entity, see *Wiedmann* v. *The Bradford Group, Inc.*, 444 Mass. 698, 711 (2005), the claims against Graziano and Schulman should not have been dismissed. The judgment of dismissal is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*