NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-142                                    Appeals Court

ELMER DONIS & others[1]  vs.  AMERICAN WASTE SERVICES, LLC,
& others.[2]

No. 18-P-142.

Norfolk.     December 12, 2018. - May 22, 2019.

Present:  Vuono, Hanlon, & Shin, JJ.

Massachusetts Wage Act. Contract, Public works, Performance and
     breach, Third party beneficiary. Labor, Public works,
     Wages, Minimum wage. Minimum Wage. Public Works, Wage
     determination. Administrative Law, Wage administration.
     Municipal Corporations, Contracts. Employment, Records.
     Limited Liability Company. Common Law.

Civil actions commenced in the Superior Court Department on
August 1, 2012, and February 21, 2013.

After consolidation, a motion for partial summary judgment
as to liability only was heard by Brian A. Davis, J.; pretrial
motions were heard by him; and entry of final judgment on
stipulated damages was ordered by him.

Gregory V. Sullivan (Michael P. Morizio also present) for
the defendants.
Nicole Horberg Decter for the plaintiffs.

_____

[1] Juan Florian, Melvin Granados, Wilfrido Monterroso, Edgar
Ruiz, Edvin Sambrano, Ismael Sambrano, Enrique Sarceno, Victor
Serrano, and Obdulio Albeno.

[2] Christopher Carney and Michael Galvin.

The following submitted briefs for amici curiae:
<u>Maura Healey</u>, Attorney General, <u>& Karla E. Zarbo</u>, Assistant Attorney General, for the Attorney General.
<u>Joseph L. Sulman</u> for Massachusetts Employment Lawyers Association.
<u>Liliana Ibara & Joseph J. Michalakes</u>, Greater Boston Legal Services, for Immigrant Worker Center Collaborative.

SHIN, J.  The plaintiffs brought this action to recover prevailing wages they say are owed to them under G. L. c. 149, § 27F, which mandates payment of a specific minimum wage for certain public works contracts.  Judgment entered for the plaintiffs, and the defendants appeal, raising numerous issues.  Chief among them are (1) whether § 27F requires, as a condition precedent to liability, that the public authority awarding the contract obtain a wage rate schedule from the Department of Labor Standards (department) concurrently with execution of the contract, and (2) whether the plaintiffs can recover for damages they incurred outside § 27F's three-year statute of limitations by bringing a common-law claim for breach of contract as intended third-party beneficiaries.  As to the first issue, we conclude that a concurrent rate schedule is not a statutory prerequisite to imposing liability under § 27F, which is a strict liability statute that requires employers to stipulate in the contract to pay their employees the prevailing wage.  But as to the second issue, we agree with the defendants that, in the

precise circumstances of this case, § 27F preempts[3] the plaintiffs' common-law breach of contract claim, barring them from recovering outside the three-year limitations period.  We therefore affirm in part and reverse in part.[4]

Background.  1.  Facts and statutory background.  The following facts are undisputed or taken from the plaintiffs' statement of material facts in support of summary judgment, which the judge deemed admitted.[5]

AWS is a limited liability company engaged in waste collection, recycling, and disposal.  At all relevant times, Christopher Carney and Michael Galvin were co-owners and officers of AWS.  Carney served as AWS's president, while Galvin served as vice-president.

Variously from August 2006 to December 2011, the plaintiffs worked on AWS's disposal trucks as "shakers," referred to in the industry as such because of the nature of their work, consisting primarily of loading the trucks with waste materials and

---

[3] We use the terminology adopted by the Supreme Judicial Court in Lipsitt v. Plaud, 466 Mass. 240 (2013).

[4] We acknowledge the amicus briefs submitted by the Attorney General, the Immigrant Worker Center Collaborative, and the Massachusetts Employment Lawyers Association.

[5] The judge deemed the facts in the statement admitted based on the defendants' failure to comply with Superior Court Rule 9A(b)(5).  The defendants have not argued that this was an abuse of discretion.

operating hydraulic levers to compact the materials. AWS employed the plaintiffs under contracts it had with the towns of Foxborough, Franklin, Medway, and Wrentham. Each contract required AWS to comply with the prevailing wage law,[6] including G. L. c. 149, § 27F, which applies to public works contracts involving the use of "trucks, vehicles or equipment." Section 27F mandates that employers pay wages to "operators of said trucks, vehicles or equipment" according to a rate schedule issued by the department:

> "No agreement of lease, rental or other arrangement, and no order or requisition under which a truck or any automotive or other vehicle or equipment is to be engaged in public works by the commonwealth or by a county, city, town or district, shall be entered into or given by any public official or public body unless said agreement, order or requisition contains a stipulation requiring prescribed rates of wages, as determined by the commissioner,[7] to be paid to the operators of said trucks, vehicles or equipment. Any such agreement, order or requisition which does not contain said stipulation shall be invalid, and no payment shall be made thereunder. Said rates of wages shall be requested of said commissioner by said public official or public body, and shall be furnished by the commissioner in a schedule containing the classifications of jobs, and the rate of wages to be paid for each job."

---

[6] The prevailing wage law, G. L. c. 149, §§ 26-27H, requires general contractors and subcontractors to pay a special minimum wage to workers employed in public construction and public works. See Lighthouse Masonry, Inc. v. Division of Admin. Law Appeals, 466 Mass. 692, 697 (2013).

[7] "Commissioner" means "the director of the department of labor standards." G. L. c. 149, § 1.

Section 27F also authorizes private rights of actions by aggrieved employees:

"An employee claiming to be aggrieved by a violation of this section may, . . . within [three] years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees."

As the department has explained in an opinion letter, it derives wage rates for "solid waste and recycling collection and hauling" by first "look[ing] to collective bargaining agreements between employers and organized labor." For cities or towns not covered by a collective bargaining agreement, the department will request from them information regarding "[t]he current hourly pay scales showing step increases and date graduations for Heavy Equipment Operators and Laborers for the city or town employees," as well as health plan information. The department will then input this information into its "Prevailing Wage database, which generates the wage rate schedule."

Although all the original contracts at issue were accompanied by a wage rate schedule, the awarding authorities did not consistently request that the department issue an updated schedule when the contracts were renewed or extended. As a result, some were accompanied by a concurrently issued rate

determination, while others were not. For those that were not, after litigation commenced, counsel for the plaintiffs asked the department to retroactively calculate the prevailing wage rates applicable to those contract years. The department then requested and obtained from the awarding authorities "[t]he hourly pay scales that were in effect for the requisite year, showing step increases and date graduations for Heavy Equipment Operators and Laborers for the city or town employees." Based on this information, the department calculated the prevailing wage rates for each of the contract years in question.

In the relevant timeframe,[8] the prevailing wage rates as determined by the department ranged from $20 per hour to $24.81 per hour. The defendants paid the plaintiffs significantly less, between $16 and $17 per hour.

2. Procedural history. The plaintiffs raised the following claims, among others: nonpayment of the prevailing wage, in violation of G. L. c. 149, § 27F; nonpayment of wages owed, in violation of the Wage Act, G. L. c. 149, § 148; and breach of contract as intended third-party beneficiaries. The plaintiffs filed a motion for partial summary judgment as to

---

[8] As discussed infra, the plaintiffs' claims are subject to a three-year statute of limitations. The plaintiffs initiated this action on August 1, 2012, and do not allege underpayment of wages after December 31, 2011. The relevant time period is therefore August 2009 through December 2011.

liability on only the statutory claims, which the judge allowed. As most pertinent here, the judge made the following rulings: (1) the defendants were required to pay the prevailing wage under § 27F; (2) there was no genuine dispute of material fact that the defendants did not pay the prevailing wage during the relevant timeframe; (3) any failure by the awarding authority to request a current wage rate schedule did not absolve the defendants of liability; (4) Carney and Galvin were personally liable for the unpaid wages; and (5) summary judgment on liability was appropriate despite the defendants' assertion that they voluntarily paid for eight hours per day even though the plaintiffs actually worked fewer hours.

Before trial on damages and the nonstatutory claims, the plaintiffs filed two motions in limine -- the first seeking to preclude the defendants from challenging the validity of the wage rate determinations made by the department, and the second seeking to preclude evidence that the defendants compensated the plaintiffs on a day rate rather than an hourly rate. The judge allowed the first motion on the ground that the department's wage rate determinations could be challenged only administratively or through a certiorari action and that, in any event, the determinations were not arbitrary or capricious. The judge allowed the second motion partially on the ground that the

defendants did not keep adequate records to show that they compensated the plaintiffs on a day rate.

On the scheduled first day of trial, the parties entered into a conditional stipulation establishing the amount of the plaintiffs' damages. The parties then filed a joint motion in which they requested that final judgment enter against the defendants on the statutory claims and the breach of contract claim, without prejudice to the defendants' right to appeal. The plaintiffs agreed to conditionally withdraw their claims for unpaid overtime and unjust enrichment, subject to this court's decision on appeal with respect to the other claims. In addition, the parties agreed to present to this court for de novo review the following question of law:

> "[W]hether a contract incorporating prevailing wage and/or [G. L. c. 149, § 27F,] obligations as a contract term may be enforced by the [p]laintiffs as third party beneficiaries whereby the [p]laintiffs would receive single damages under a breach of contract theory and for a time period outside the applicable [three] year statute of limitations for [G. L.] c. 149 §§ 27F, 148, and 150."

After the judge allowed the joint motion, final judgment entered against the defendants in the stipulated-to amounts: $119,036 on the statutory claims, representing damages from 2009 to 2011 exclusive of treble damages, attorney's fees, and costs; and $82,054.40 on the breach of contract claim, representing damages from 2006 to 2009 exclusive of interest.

Discussion. The defendants' primary arguments on appeal are as follows: (1) G. L. c. 149, § 27F, does not apply to the contracts or the work the plaintiffs performed thereunder; (2) if § 27F applies, no liability can attach where the awarding authority failed to obtain a wage rate schedule concurrently with execution of the contract; (3) the judge erred by precluding the defendants from challenging the department's wage rate determinations as arbitrary and capricious; (4) the judge should not have entered summary judgment on liability because there was an issue of disputed fact whether the defendants adequately compensated the plaintiffs on a day-rate basis; (5) relatedly, the judge erred by precluding the defendants from offering evidence that they compensated the plaintiffs on a day-rate basis in order to mitigate damages; (6) Carney and Galvin cannot be held individually liable; and (7) § 27F preempts the plaintiffs' common-law claim for breach of contract as intended third-party beneficiaries. We review de novo the issues resolved on summary judgment (issues 1, 2, 4, and 6), viewing the evidence in the light most favorable to the defendants. See Correa v. Schoeck, 479 Mass. 686, 692-693 (2018). We review for abuse of discretion the judge's resolution of the motions in limine (issues 3 and 5). See N.E. Physical Therapy Plus, Inc. v. Liberty Mut. Ins. Co., 466 Mass. 358, 363 (2013). We review the last issue, a pure question of law, de novo.

1.  Applicability of § 27F.  We begin with the threshold question whether the plaintiffs are entitled to prevailing wages under G. L. c. 149, § 27F.  The defendants contend that § 27F does not apply for two reasons:  the contracts do not qualify as "public works" contracts, and the plaintiffs do not qualify as "operators of . . . trucks, vehicles or equipment."  G. L. c. 149, § 27F.  Both of these arguments are foreclosed by Perlera v. Vining Disposal Serv., Inc., 47 Mass. App. Ct. 491 (1999).  In that case we held that municipal contracts for refuse collection and disposal are contracts for "public works" under § 27F, id. at 493-496, and that the "shakers" who work on the trucks are "operators" within the meaning of that statute, id. at 498.  See Mullally v. Waste Mgmt. of Mass., Inc., 452 Mass. 526, 528 (2008) (citing Perlera for the proposition that "§ 27F . . . requires that the prevailing wage rate set by the [department] be paid to waste disposal employees performing under municipal contracts").

In attempting to distinguish Perlera, the defendants assert that AWS was not engaged in "public works" because it deposited the waste materials it collected at disposal sites that are privately owned.  Perlera cannot be read so narrowly.  Indeed, in Perlera, we rejected a similar argument that § 27F applies only where "public works are conducted directly 'by' the government, i.e., not by independent contracting."  47 Mass.

App. Ct. at 498. As we reasoned, the focus of the statute "is the utilization of vehicles or equipment on public works at the behest of the government, whether directly or indirectly." Id. The defendants have given us no reason to distinguish or overrule Perlera, which therefore controls the result here.

2. Missing wage rate schedules. Having determined that § 27F applies, we next consider the defendants' contention that issuance of a rate schedule concurrently with execution of a public works contract is a statutory prerequisite to the imposition of liability. As the defendants note, § 27F puts the onus on the awarding authority, and not the employer, to request the rates from the department. See G. L. c. 149, § 27F ("Said rates of wages shall be requested of [the department] by said public official or public body . . ."). Nonetheless, we conclude that an awarding authority's failure to comply with this requirement does not relieve an employer of its obligation to pay prevailing wages once it has contracted to do so.

General Laws c. 149, § 27F, expressly conditions the legitimacy of a public works contract on the inclusion of "a stipulation requiring prescribed rates of wages, as determined by the [department]." Contracts that do not contain such a stipulation are "invalid, and no payment shall be made thereunder." Id. Thus, regardless of whether the awarding authority concurrently obtains a rate schedule, the employer

must pay prevailing wages under § 27F as stipulated to in the contract.  This is the clear import of our decision in Perlera, in which we rejected the argument that a contract was "void [under § 27F] for failing to contain a copy of the applicable prevailing wage rate schedule."  47 Mass. App. Ct. at 492.  We concluded that, despite the missing schedule, the contract was valid -- and required the employer to pay prevailing wages thereunder -- because it "included the prevailing wage stipulation required by [§ 27F]."  Id. at 499 n.12.  See id. at 492-493.

Though we did not elaborate on our reasoning in Perlera, we think our holding there is consistent with the purpose of the prevailing wage law, which is "to achieve parity between the wages of workers engaged in public construction projects and workers in the rest of the construction industry."  Mullally, 452 Mass. at 532.  Allowing the defendants to avoid their obligation to pay the prevailing wage, to which they stipulated, would contravene this statutory purpose.  Having themselves already performed and received payment under the contracts, the defendants are not entitled to benefit from their noncompliance with their statutory and contractual obligations at the expense of the plaintiffs' right to be paid the prevailing wage.

The defendants' assertion that they are being held liable "for conduct that was not known to be improper when undertaken"

requires little discussion. The prevailing wage law is a strict liability statute. See Lighthouse Masonry, Inc. v. Division of Admin. Law Appeals, 466 Mass. 692, 698-699 (2013). And in any event, the defendants bid for, negotiated, and executed the contracts, each of which contained the required stipulation that the defendants comply with the prevailing wage law.[9] Moreover, all the original contracts, along with some of the renewed and extended contracts, were accompanied by current rate schedules, putting the defendants on notice that they were obligated to pay their employees at rates established by the department.[10] In those instances where an awarding authority failed to obtain a current schedule, the defendants had available to them the simple expedient of requesting one. It is not the employee who should be penalized for the employer's ignorance or disregard of the law. See id. at 699 ("an employer's reason for the

---

[9] For the first time in their reply brief, the defendants suggest that they were not on notice of their obligations because some of the contracts "referenc[ed] prevailing wage laws generally" and not § 27F specifically. This is of no consequence because the prevailing wage law includes § 27F. Cf. Perlera, 47 Mass. App. Ct. at 499 n.12 ("the contract provision incorporating the requirements of chapter 149 necessarily included the prevailing wage stipulation required by [§ 27F]").

[10] The schedules set forth the prevailing wage rates applicable to each year covered by a given contract. Invariably, the rates increased over the term of the contract.

violation [of the prevailing wage law] is irrelevant; the fact of violation is sufficient for a penalty to issue").[11]

3. The department's wage rate determinations. The defendants argue alternatively that the judge erred by precluding them from challenging the department's rate determinations as arbitrary and capricious. This argument faces the initial hurdle that the proper procedure for challenging a wage determination (or job classification) is through the administrative review mechanism set out in G. L. c. 149, § 27A. See Construction Indus. of Mass. v. Commissioner of Labor & Indus., 406 Mass. 162, 166 (1989). Although we grant that administrative review may not have been available in these

_____

[11] The defendants' reliance on McGrath vs. ACT, Inc., Mass. App. Div., No. 08-ADMS-40018 (Southern Dist. Nov. 25, 2008), is misplaced. McGrath held that employers need not pay the prevailing wage required by G. L. c. 149, § 27, which applies to contracts for construction of public works, if the awarding authority fails to request a rate schedule and incorporate it into the contract. We are not bound by McGrath, which is in any event distinguishable because § 27, unlike § 27F, does not require that the contract contain a stipulation mandating prescribed rates of wages. See id. at 259-260 (distinguishing Perlera on this basis). We note also that the Appellate Division seemed not to have considered that employers are strictly liable under the prevailing wage law, or that § 27 provides that "[t]he general contractor shall annually obtain updated rates from the public official or public body and no contactor [sic] or subcontractor shall pay less than the rates so established." Cf. Somers v. Converged Access, Inc., 454 Mass. 582, 591 (2009) (because G. L. c. 149, § 148B, imposes strict liability, "[g]ood faith or bad, if an employer misclassifies an employee as an independent contractor, the employer must suffer the consequences").

circumstances,[12] the defendants did not even try to invoke that remedy or to seek judicial review through an action for a writ of certiorari. See Teamsters Joint Council No. 10 v. Director of Dep't of Labor & Workforce Dev., 447 Mass. 100, 106 (2006). Instead, they sought to raise the issue as a defense in an action involving only private parties, thereby depriving the judge of the department's views in an area in which it is entitled to "great deference." Id., quoting Box Pond Ass'n v. Energy Facilities Siting Bd., 435 Mass. 408, 412 (2001).

But even assuming the issues are properly before us, the defendants have failed to meet their heavy burden of demonstrating that the department's determinations were arbitrary and capricious. We are unable to assess the defendants' first argument -- that the department relied on the wrong job classifications -- because it is unsupported by citations to the record and insufficiently developed. The factual premise of the defendants' second argument -- that the department erred in considering only collective bargaining rates -- is contradicted by the record, which reflects that the department determined the prevailing rates based on "[t]he hourly pay scales that were in effect for the requisite year

---

[12] This is so in part because G. L. c. 149, § 27A, provides that a wage determination may be appealed "[w]ithin five days from the date of the first advertisement or call for bids."

. . . for Heavy Equipment Operators and Laborers for the city or town employees."[13]  Lastly, § 27F does not require the department to provide a "separate health and welfare rate," as the defendants contend.  The defendants fail anyway to explain how they were prejudiced in this respect.  See Mullally, 452 Mass. at 529 ("An employer may prorate on an hourly basis qualifying health and welfare benefits paid on behalf of an employee and deduct that amount from the prevailing wage rate").

4.  Day-rate method.  We turn to the defendants' two related arguments concerning the day-rate method of compensation, under which employees are paid a flat sum per day regardless of hours worked.  According to the defendants, they compensated the plaintiffs at rates that matched or exceeded the prevailing wage rates because AWS had a discretionary policy to pay for eight hours per day, even though the plaintiffs actually worked fewer hours.  Given this potential defense, the defendants argue that the judge should not have entered summary

---

[13] Contrary to the defendants' characterization, Receiver of Boston Hous. Auth. v. Commissioner of Labor & Indus., 396 Mass. 50 (1985), does not stand for the proposition that the department must always consider nonunion rates in setting the prevailing wage.  The court there construed G. L. c. 149, § 26, to require the agency to "first refer to collective bargaining agreements 'between organized labor and employers.'"  Id. at 56, quoting G. L. c. 149, § 26.  "Only when 'no [collective bargaining] rates have been . . . established'" does § 26 require consideration of "nonunionized workers."  Id., quoting G. L. c. 149, § 26.

judgment on liability or allowed the plaintiffs' motion in limine to preclude the defendants from offering evidence of actual hours worked in order to mitigate damages.

It is true that the department has in an opinion letter endorsed the day-rate method as a means to satisfy an employer's prevailing wage obligations.  See Niles v. Huntington Controls, Inc., 92 Mass. App. Ct. 15, 18-22 (2017) (courts must give deference to department opinion letters).  But in the same opinion letter, the department stressed that "an employer wishing to compensate employees on a day rate basis must separately calculate an employee's pay on an hourly basis to ensure proper payment and make up any shortfall that might occur.  Furthermore, this calculation must be done on a timely basis to ensure the prompt payment of wages required by [the Wage Act, G. L.] c. 149, § 148."  The department further stressed that the employer "would still be obligated to track actual hours worked and maintain and submit payroll records in accordance with [G. L.] c. 149, § 27B, showing payment of the applicable prevailing wage."

Here, the defendants failed to comply with the recordkeeping obligations that would entitle them to rely on the day-rate method.[14]  The time records produced by the defendants

---

[14] The defendants observe that the department's opinion letter refers to the recordkeeping requirement of G. L. c. 149,

during discovery contain, with few exceptions, the notation "8"

for each day worked by the plaintiffs, along with the notation

"40" for the work week.[15]  Even assuming that the plaintiffs

worked fewer than eight hours on some days, it is undisputed

that the defendants did not track those hours.  The defendants

thus could not, and did not, separately calculate the

plaintiffs' pay on an hourly basis to make up for any shortfall

that might have occurred in a given pay period.

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946),

does not support the defendants' position that the judge should

have allowed them to introduce evidence to refute their own time

---

§ 27B, which the plaintiffs concede is inapplicable here.  But
the defendants unquestionably had the duty under other
provisions of State and Federal law to keep accurate records of
the hours worked by their employees.  See G. L. c. 151, § 15
("Every employer shall keep a true and accurate record of the
name, address and occupation of each employee, of the amount
paid each pay period to each employee, [and] of the hours worked
each day and each week by each employee . . .."); 29 U.S.C.
§ 211(c) (2012) ("Every employer subject to any provision of
[the Fair Labor Standards Act] . . . shall make, keep, and
preserve such records of the persons employed by him and of the
wages, hours, and other conditions and practices of employment
maintained by him . . .."); 29 C.F.R. § 516.2(a)(7) (1987)
("Every employer shall maintain and preserve payroll or other
records containing . . . [h]ours worked each workday and total
hours worked each workweek . . ..").

[15] In some instances the timesheets show that the plaintiffs
worked more than forty hours per week.  The AWS manager in
charge of keeping the timesheets acknowledged in his deposition
that the plaintiffs occasionally worked more than forty hours
per week and that the timesheets would accurately reflect the
additional hours.

records.[16] There, the United States Supreme Court affirmed that "it is the employer who has the duty under . . . the [Fair Labor Standards] Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed." Id. at 687. Thus, "[w]hen the employer has kept proper and accurate records, the employee may easily discharge [the] burden [of proving that the employee performed work for which he or she was not properly compensated] by securing the production of those records." Id. On the other hand, when the employer fails to keep adequate records, Anderson establishes a burden-shifting framework whereby the employee bears the initial burden to "prov[e] that [the employee] has in fact performed work for which he [or she] was improperly compensated and [to] produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. If the employee does so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 687-688.

---

[16] Anderson was superseded by statute on other grounds, as stated in Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. 513, 516-517 (2014), and IBP, Inc. v. Alvarez, 546 U.S. 21, 26-28 (2005).

The defendants' reliance on Anderson's burden-shifting framework is misplaced. The framework is designed to benefit employees, not employers -- that is, to ensure that employees are not "penalize[d]" for their inability "to prove the precise extent of uncompensated work" because of the "employer's failure to keep proper records." Id. at 687. See Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (where employer fails to keep proper records, employee "entitled to Anderson's lenient burden of proof").[17] The defendants cite no case that has interpreted Anderson to allow an employer to challenge the reliability of its own, facially adequate records. To do so here would permit the defendants to utilize the day-rate method on a post hoc basis despite the existence of contemporaneous time and payroll records showing that the plaintiffs performed work for which they were not properly compensated. This would in turn subvert "the legislative purpose behind the Wage Act . . . to provide strong statutory protection for employees and

---

[17] Courts in other States have applied the burden-shifting framework in cases arising under State wage laws, but likewise for the purpose of not penalizing the employee for the employer's failure to keep adequate records. See, e.g., Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 241 (2003) ("we find persuasive the plaintiffs' contention that, when an employer has failed to comply with statutory record keeping provisions, the failure to implement the Anderson burden shift has the potential to interfere with the remedial purpose of [the State wage collection statute], because any uncertainty in the damages amount is the fault of the employer").

their right to wages."  Crocker v. Townsend Oil Co., 464 Mass. 1, 13 (2012).  Cf. Sullivan v. Sleepy's LLC, 482 Mass. 227, 236 (2019) ("employers may not retroactively allocate payments made for one purpose to a different purpose" and must communicate "upfront . . . the breakdown of the amounts to the employees"); Dixon v. Malden, 464 Mass. 446, 451 (2013) (gratuitous salary payments made after employee's termination did not mitigate damages for unpaid vacation where employer "did not characterize the continued salary payments as payment for vacation accrual" or "communicate in any way that the salary continuation was payment for accrued vacation time").

Furthermore, even if Anderson's burden-shifting principles had some place in the analysis, the judge was warranted in excluding the defendants' proffered evidence.  The defendants sought to introduce "weight slips" indicating the time AWS's drivers entered and exited each disposal site, along with testimony from the drivers that the plaintiffs never started work before 7 A.M. and finished work before the drivers went to the sites.  The judge concluded, quoting Anderson, 328 U.S. at 687, that recreating each plaintiff's work history via this methodology "would have been, at best, approximate and insufficiently 'precise.'"  The defendants have not shown, or argued for that matter, that the judge abused his discretion in this regard.  See White vs. NIF Corp., U.S. Dist. Ct., No. 15-

322-WS-N (S.D. Ala. Jan. 18, 2017) ("The defendant's evidence of unreliability . . . is far too feeble to prevent the plaintiffs from proving the fact and quantity of uncompensated hours from the defendant's own records").

5. _Personal liability_. As noted, the plaintiffs brought claims under both G. L. c. 149, § 27F, and the Wage Act, G. L. c. 149, § 148. The judge found Carney and Galvin individually liable for the plaintiffs' damages under the Wage Act, which contains a corporate officer liability provision,[18] without reaching whether they would also be liable under § 27F, which contains no such express provision. The defendants contend that this was error because the plaintiffs should not be permitted to recast their claim for prevailing wages under § 27F as a claim for unpaid wages under the Wage Act.

---

[18] Specifically, the Wage Act provides that "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section." G. L. c. 149, § 148. "This provision in effect imposes liability on the president and treasurer of a corporate employer, as well as on an officer or agent of the corporation who 'controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation.'" Cook v. Patient Edu, LLC, 465 Mass. 548, 553 (2013), quoting Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 711 (2005). Managers, officers, or other agents of limited liability entities can also be held individually liable under the Wage Act, even though the statute does not expressly refer to those entities. See id. at 553-554, 556.

The way in which the plaintiffs pleaded their claims was proper.  The Wage Act entitles employees to "timely payment" of the wages they are owed.  Crocker, 464 Mass. at 7.  Thus, the plaintiffs have two distinct claims:  they were not paid prevailing wages under § 27F, and they were not timely paid under the Wage Act at the rates required by § 27F.  The Supreme Judicial Court reached a similar conclusion in Crocker, holding that an employee suing for overtime pay had claims under both the Wage Act and the overtime statute, G. L. c. 151A, § 1A.  See Crocker, supra at 6-7.  The defendants offer no principled basis for distinguishing Crocker.

Commonwealth v. Cintolo, 415 Mass. 358 (1993), does not aid the defendants.  The court in Cintolo held that the president of a corporation could not be held criminally liable under G. L. c. 149, § 150C, a wage statute that does not contain a corporate officer liability provision.  See id. at 359.  But in Cook v. Patient Edu, LLC, 465 Mass. 548, 556 (2013), the court distinguished Cintolo on the ground that, even assuming the rules of lenity and strict construction apply in civil suits brought under the Wage Act,[19] "[t]he legislative intent of the Wage Act, to hold individual managers liable for violations, is

---

[19] The Wage Act authorizes criminal penalties as well as private rights of actions by aggrieved employees.  See G. L. c. 149, §§ 148, 150.

clear, and there is therefore no ambiguity." Cook, not Cintolo, controls here.

The defendants argue in the alternative that there is a disputed issue of material fact whether Carney and Galvin "control[led], direct[ed], and participate[d] to a substantial degree in formulating and determining policy" of AWS, as is required for them to be personally liable. Cook, 465 Mass. at 556, quoting Weidmann v. The Bradford Group, Inc., 444 Mass. 698, 711 (2005). But the defendants did not raise this argument in opposing summary judgment, and the plaintiffs' statement of material facts, deemed admitted, see note 5, supra, established that Carney and Galvin "were responsible for supervising the services provided for in the municipal contracts" and "paid or supervised the payment of waste removal employees." The argument is therefore waived. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

6. Preemption of breach of contract claim. Finally, we reach the question of law that the parties agreed to present to us for review: whether G. L. c. 149, § 27F, preempts the plaintiffs' common-law claim for breach of contract as intended third-party beneficiaries. The significance lies in the differing statutes of limitations: three years for § 27F

claims, see G. L. c. 149, § 27F,[20] versus six years for breach of contract claims, see G. L. c. 260, § 2. The plaintiffs filed this lawsuit on August 1, 2012. Thus, if the breach of contract claim is preempted, the plaintiffs could recover damages only for claims that accrued on or after August 1, 2009. On the other hand, if there is no preemption, the plaintiffs could also recover for claims that accrued between August 2006 and August 2009, albeit, as the plaintiffs concede, without the right to the enhanced remedies (treble damages and attorney's fees) authorized by § 27F. Cf. Lipsitt v. Plaud, 466 Mass. 240, 251 (2013) (treble damages and attorney's fees not available outside Wage Act's three-year statute of limitations, though employers are still subject "to normal contract liability for the full six-year statute of limitations period applicable to contracts generally").

We note at the outset the specific nature of the breach of contract claim before us. The claim as set out in the second amended complaint is that the plaintiffs are intended third-party beneficiaries of the "require[ment]" in each of the contracts between the defendants and the awarding authorities that the "[d]efendants pay [their] qualifying employees the prevailing wage rate, as set by the [department] and, generally,

---

[20] Claims under the Wage Act are also subject to a three-year statute of limitations. See G. L. c. 149, § 150.

to comply with the Commonwealth's statutes and regulations."  In other words, the claim -- more precisely, the plaintiffs' assertion of third-party beneficiary status -- is based on the "stipulation requiring prescribed rates of wages" that is mandated by § 27F.  The plaintiffs point to no independent provision of the contracts to support their claim, nor do they claim breach of any independent employment agreement they may have had with the defendants.  We do not decide whether § 27F would preclude a common-law claim in those circumstances.

Confining our analysis accordingly -- and assuming, without deciding, that the plaintiffs qualify as third-party beneficiaries of the mandated stipulation -- we conclude that § 27F impliedly preempts the plaintiffs' breach of contract claim.  See Lipsitt, 466 Mass. at 244 ("Where the statute does not contain any express language concerning the availability of common-law remedies, we consider the possibility of implied preemption").  We do not write on a blank slate on the matter. In deciding an analogous issue in Lipsitt, the Supreme Judicial Court drew a distinction between claims that depend on "a new right or duty that 'is wholly the creature of statute [and] does not exist at common law'" and those that "do not depend on proving a violation of some statutorily created right."  466 Mass. at 247, 248, quoting Mansfield vs. Pitney Bowes, Inc., U.S. Dist. Ct., No. 12-1031-DJC, slip op. at 6 (D. Mass. Mar.

12, 2013). Though the court concluded that the Wage Act does not preempt the latter category of claims, it suggested in a footnote that it would reach a different result in "situations where an employee would have no recognized cause of action but for the statutes' imposition of obligations on employers." Lipsitt, supra at 247 n.11, quoting Mansfield, supra. Such situations include "[c]ases involving . . . the [p]revailing [w]age statute." Id., quoting Mansfield, supra.

While the plaintiffs accurately observe that the footnote just quoted is dictum, it is clear that the court intended it to provide guidance for application to future cases. The court expressly noted its "agree[ment] with the general proposition . . . that a plaintiff should not be allowed to circumvent procedural or other requirements imposed by a particular statute by pleading a common-law cause of action that asserts a right created under that statute and not previously recognized at common law." Lipsitt, 466 Mass. at 247 n.11. This is consistent with the principle expressed in the court's earlier decisions that "where a statute has been enacted seemingly intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law . . . are thereby superseded." School Comm. of Lowell v. Mayor of Lowell, 265 Mass. 353, 356 (1928).

This case is one in which the plaintiffs "would have no recognized cause of action but for [§ 27F's] imposition of obligations on employers."  Lipsitt, 466 Mass. at 247 n.11. The obligation that the plaintiffs say gives them third-party beneficiary status is the very stipulation that is required by § 27F to be included in the contract between the employer and the awarding authority.  Stated differently, under the plaintiffs' theory, it is the statute itself that creates the third-party beneficiary claim.  But we do not think the Legislature would have mandated inclusion of the stipulation, provided a remedy for its violation, and prescribed a three-year limitations period, if it intended at the same time to allow plaintiffs to circumvent the limitations period by asserting third-party beneficiary status based on the mandatory stipulation.  The duty that the plaintiffs seek to enforce here is a statutory creation.  Because the Legislature has provided a specific remedy for violation of that duty, by "necessary implication," the plaintiffs' breach of contract claim is preempted.  Id. at 247, quoting Eyssi v. Lawrence, 416 Mass. 194, 199-200 (1993).  See George v. National Water Main Cleaning Co., 286 F.R.D. 168, 172, 187-88 (D. Mass. 2012) (prevailing wage law preempted plaintiffs' claim for breach of contract as alleged third-party beneficiaries).  But see Tomei vs. Corix Utils., Inc., U.S. Dist. Ct., No. 07-cv-11928-DPW (D. Mass.

Sept. 10, 2009) (finding to contrary but noting absence of "any Massachusetts cases which confront the issue of preclusion for the prevailing wage statute").

Conclusion.[21]  So much of the judgment awarding damages on count IV (breach of contract -- third-party beneficiary) is reversed.  The remainder of the judgment is affirmed, and the matter is remanded to the Superior Court for proceedings consistent with this opinion.

So ordered.

---

[21] We see no merit to the defendants' other miscellaneous arguments.  The defendants have failed to show that the judge abused his discretion in granting the plaintiffs' motion for injunctive relief, which the judge could have found necessary to protect the plaintiffs' damages remedy.  And the defendants' challenge to the dismissal of their counterclaims does not rise to the level of appellate argument.